### WEIDHAAS v. LOEW'S Inc. et al.

District Court, S. D. New York.

Aug. 14, 1941.

Edward Siegel, of New York City, for plaintiff.

Darby & Darby, of New York City, (Samuel E. Darby, Jr., Walter Darby, and Samuel D. Cohen, all of New York City, of counsel), for defendants.

NEVIN, District Judge (sitting by designation).

This is a suit under the patent laws of the United States. It is before the court on plaintiff's amended complaint filed May 14, 1940; defendant's (Loew's Inc.) answer thereto also filed May 14, 1940; defendant's amendment to its answer, which (amendment) was filed on November 20, 1940, and the evidence, both oral and documentary, including numerous exhibits presented at the trial.

The patent in suit is No. 1,756,043, issued to Francis E. Weidhaas of Bronxville, New York, on April 29, 1930, on applica-

tion filed July 14, 1928. It is for a "Stage Curtain or Drop."

Originally (in his pleadings) plaintiff claimed infringement also of Patent No. 1,900,677. This patent (No. 1,900,677) was issued on March 7, 1933, to Gustave A. Weidhaas, assignee of Peter Clark and Howard V. Harding. It is for "Curtain and Controlling Means therefor." It is agreed (Stipulation, Ex. 2) that the title to Patent No. 1,900,677 (as well as to Patent No. 1,756,043) is vested in plaintiff herein.

At the outset of the trial, however, plaintiff (S. M. P. 3) "withdrew", or at any event, attempted to withdraw, "from consideration" Patent No. 1,900,677. Defendants (S. M. P. 3) objected "to its withdrawal except by dismissal on the merits." Counsel were unable to agree as to the "rights" of the respective parties growing out of the attempted "withdrawal" of Patent No. 1,900,677. The questions presented were vigorously argued at the time of trial. They are again stressed in the briefs.

At the trial it was agreed, however, (S. M. P. 4) that the case should proceed upon Patent No. 1,756,043, with the understanding that the court could pass on the questions raised by the attempted withdrawal of Patent No. 1,900,677 at a later time. The court will follow this procedure in its decision, that is to say, in this present decision the court will deal only with Patent No. 1,756,043, and will here limit its decision, findings and conclusions solely to that patent. At a later time, and separately, the court will decide as to Patent No. 1,-900,677. It may be (though at this time this is only a suggestion) that the court may desire some further evidence as to some of the matters referred to by defendants, as for example, the (Br. P. 3) "expense incident to preparing to meet the issues * * *", before reaching a final conclusion as to the proper order to be entered, under the circumstances, with respect to Patent No. 1,900,677. If the court deems this necessary, or wishes to hear further from counsel before entering such an order as it considers proper, counsel will be notified and afforded an opportunity to be heard. Meantime, the case, insofar as the patent now in suit is concerned, will have been disposed of in this court.

Referring then to Patent No. 1,756,043, it is, as stated, for "Stage Curtain or Drop." It contains 18 claims. All are in issue. Claim 12 is a method claim. All the

rest have reference to curtain construction. In his patent (Ex. 1) plaintiff says, inter alia, "My present invention relates to an improvement in method of, and apparatus for, stage fittings or scenic effects * * *. One advantage of my device is the provision, with a curtain or back drop, of means whereby the curtain may be quickly and easily draped, as a setting, in the similitude of various objects, such as trees, tents, door openings, Gothic arches or conventionalized ornamental representations or outlines thereof, either in solid outline or shadow form * * * and my device being extremely flexible in this respect, such variations being only limited by the imagination of the scenic artists or the requirements of the act."

As shown by the record, an outstanding example of a curtain made according to the patent is the one that is now, and for some time has been, in use at Radio City Music Hall in New York City. A model illustrating the device of the patent in suit is in evidence as plaintiff's exhibit No. 3.

Upon the trial, it was conceded by defendants that infringement existed, if the patent in suit is valid. As to this, the record (S. M. P. 12) shows the following: "The Court: So there is no serious denial of infringement if the patent is valid, is that your position? Mr. Darby (Of counsel for defendants): If the patent is valid, there is no denial of infringement." The only question here to be determined, therefore, is as to the validity of Patent No. 1,756,043.

In its answer defendant alleges invalidity for several reasons, among others, "Because the alleged inventions of said Letters Patent, and each of them, were known to others than the respective patentees prior to their alleged inventions and/or more than two years prior to their applications for Letters Patent therefor and/or were in public use prior to the alleged inventions by the said respective patentees and/or more than two years prior to their applications for Letters Patent therefor * * *." And at the beginning and throughout the trial (until its close, as presently will be noted) these claims upon the part of defendants were still asserted. As to this the record (S. M. Pp. 12 et seq.) shows: "Mr. Darby: * * * There is one further defense that I will speak to your Honor about, very briefly, and I think it is about the only defense concerning which evidence will be adduced of any sub-

stantial amount, at least, and that is that in 1903 or in 1904, your Honor noting that the patent was not applied for until 1928, * * * in what was then known as Luna Park, an amusement park in Coney Island, there was a side show, * * * as part of the scenic effect which was the finale of the affair, they had a curtain which was made of gauze so as to simulate, in conjunction with stereopticon slides, floating clouds. This curtain was itself a contour curtain. * * * That curtain, that gauze curtain to simulate a cloud, was the identical thing of the patent. * * * That we claim constitutes complete prior knowledge and there will be produced people who built that curtain and the people who operated it during the show, and with evidence of so conclusive a nature that there can be no dispute about it as prior knowledge and public use."

A "substantial amount" of evidence was adduced bearing on this defense. In fact, the major portion of the trial (as shown by the record) was devoted to the introduction of evidence in its support. However, at the conclusion of all the evidence, defendants withdrew this defense from further consideration, saying (S. M. P. 601-602): "Mr. Darby: I am very seriously of the personal belief that I will withdraw that as a defense. * * * Very well, your Honor, I make the statement now that the only defense that will be pressed in this case is anticipation and want of invention over the printed publications in Defendant's Exhibit A. That is the only defense that will be pressed in the case."

Turning, then, to the only remaining contention of defendants as to validity defendants assert that the patent is invalid "because of anticipation by and want of invention over the prior published art." In support of their contention, defendant offered oral testimony and documentary evidence in the form of letters patent and prior publications (Ex. A). They submit (S. M. P. 9) that "this patent is for a most trivial thing, unpatentable and something that has been used for many years, at least as early as 1897 or thereabouts. It has been known as the Austrian shade." (For models see Exs. 21 and 39). And they urge (Br. P. 8) that "The curtain disclosed by the patent in suit is nothing more or less than an adaptation of the 'Austrian' curtain that has been known to the art since at least as early as 1889 (Tab H of the prior art book, Defendant's Exhibit A)."

The proof does not support the view thus expressed by defendants. As stated by plaintiff, nowhere in any of the publications is there any disclosure wherein an almost endless number of variable contours may be secured by raising the various cords independently of one another. The Austrian blind was never designed or intended to produce a variable contour. It is not provided with independently manipulatable draw-strings. Its structure, including the taking up of fullness or slack in the curtain by transverse gatherings or pleats definitely indicates that it was not intended to operate in the manner of plaintiff's curtain. On the contrary, it was designed and built so that it could not possibly be used in that manner. In the Austrian shade the pull-cables are all fastened together to form a unit and are drawn up as a unit so that different contours cannot be secured. It seems obvious that before an Austrian shade could be made to operate as does the curtain of the patent in suit, such a complete change in structure and operation would be required as to leave the resulting product no longer an "Austrian shade."

Upon a consideration of the whole of the record, the briefs and arguments of counsel and the applicable law, the court, as to Patent No. 1,756,043, here in suit, has arrived at the following:

### Findings of Fact.

1. Plaintiff, a citizen and resident of the State of New York, is the patentee and owner of the title to patent in suit, No. 1,756,043, granted April 29th, 1930 to Francis E. Weidhaas, for Stage Curtain or Drop.

2. The defendant, Loew's Inc., is a Delaware corporation, having its principal office in the State of New York, and is duly licensed to do and does business in the State of New York and in the Southern District of New York.

3. The defendant, Metro-Goldwyn Pictures Corporation, was a wholly owned subsidiary of Loew's Inc. which has since been dissolved. Loew's Inc., by stipulation between the parties, dated December 3, 1940 (Ex. 2), has taken over the entire defense of this case, and assumes the entire responsibility of Metro-Goldwyn Pictures Corporation for any of its acts established to be infringements of the patent in suit.

4. The patent in suit relates to stage curtain or drop in which the curtain or drop is provided with independently manipu-latable means by which any part of the contour of the curtain can be varied at will by manipulation of said means. The patent contains eighteen claims. All of the claims are charged to be infringed. The claims are drawn to the curtain construction, with the exception of claim 12 which is a method claim defining a method of manipulating the curtain.

5. Defendant's contour curtain charged to infringe, and the mechanism for operating it, have been described in Paragraph 6 of the stipulation, in evidence as Plaintiff's Exhibit 2.

6. At the trial and in the record (S. M. P. 12) defendant conceded infringement, if the patent is valid. The sole question here presented, therefore, is as to the validity of the claims of Patent No. 1,756,-043.

7. Plaintiff was the first to produce a stage curtain or drop in which the shape and form of the plane and of the lower edge of the curtain could be varied at will by the separable and selective manipulation of cables and without loosening and adjusting pulleys or rearranging parts. The improvements of the patent in suit have been embodied in a number of successfully-operating curtains.

8. The curtain of the patent in suit is of great utility. It has been accepted and widely used by the theatrical industry in well-known theatres and productions and is an important and valuable advance in the art.

9. None of the prior patents or publications offered in evidence by defendants shows the combination of parts of the patent in suit, nor do they show parts or mechanisms operative for the same or similar purpose as that of the patent in suit.

### Conclusions of Law.

1. Plaintiff, Francis E. Weidhaas, is the lawful owner of the patent in suit, No. 1,-756,043 granted to him on April 29th, 1930.

2. The patent in suit, No. 1,756,043, is good and valid as to all of its eighteen claims. It is not anticipated by any or all of the prior patents or publications or by any prior practice or use shown by the record herein. The claims disclose new and useful invention.

3. Defendant, Loew's Inc., a corporation of the State of New York, has (concededly) infringed the patent in suit, by making or causing to be made, owning and

operating, and employing in the making and exhibiting of motion pictures, stage curtains or drops made in accordance with the patent in suit.

4. Plaintiff, Francis E. Weidhaas, is entitled to recover of defendants, Loew's Inc., and Metro-Goldwyn Pictures Corporation, the profits, gains and advantages, if any, which said defendants have received or made or which have arisen or accrued to said defendants from any infringement of the patent in suit, together with the damages, if any, which plaintiff has sustained by reason thereof.

5. Plaintiff is entitled to a perpetual injunction restraining defendants, and each of them, their associates, agents, servants, employees, and attorneys from directly or indirectly making, using, selling, or causing to be made, used or sold any curtains or drops which infringe the patent in suit, and from in any other way infringing upon any of the claims of Patent No. 1,756,043.

6. Plaintiff is entitled to an accounting of defendants, Loew's Inc., and Metro-Goldwyn Pictures Corporation, and each of them, and to a reference to a Special Master to be appointed by this Court, to ascertain, take and report to the Court an account of said profits, gains and advantages and to assess the damage, if any.

A decree awarding plaintiff judgment accordingly may be entered. Decree to be settled on notice.