**WEIDHAAS v. LOEW'S Inc. et al.**

**No. 134.**

Circuit Court of Appeals, Second Circuit.

Jan. 21, 1942.

Samuel E. Darby, Jr., of New York City (Darby & Darby, Samuel D. Cohen, and Walter A. Darby, all of New York City, on the brief), for appellants.

Edward Siegel, of New York City, for appellee.

Before AUGUSTUS N. HAND, C. E. CLARK, and FRANK, Circuit Judges.

C. E. CLARK, Circuit Judge.

Defendants appeal from a decision holding that they have infringed plaintiff's Patent No. 1,756,043, granted April 29, 1930, for a "Stage Curtain or Drop." The first defendant (who has assumed the entire defense) did not deny that there is infringement if the patent is valid, and the trial and decision were consequently directed solely to the issue of whether or not the claims in the patent represented sufficient advance over prior art as to be worthy of an exclusive right, thus promoting the "Progress of Science and Useful Arts" in the constitutional phrase. The district court upheld the patent. D.C.S D.N.Y., 41 F.Supp. 315. We do not.

The device involved here is well known to the large number of people who have seen the great curtain at the Radio City Music Hall in New York City. That curtain can be raised and lowered in such a way that various designs are presented. Although the curtain appears as a unit, separate ropes or cables, attached to the bottom of the curtain at spaced intervals and drawn up independently, can produce numerous variations—from scalloped effects when the entire curtain is completely raised to partial openings in order to reveal only a part of the stage. The defendant's curtains, used in the production of movies, are similar to the well-known Radio City curtain.

Plaintiff's patent covers the device of raising the curtain by several ropes independently operated. He also has a patent on operation of the curtain by electrical means; but allegations that this patent was infringed were withdrawn, and only the device itself is in issue. In his patent, plaintiff made eighteen separate claims, all of which were held valid and infringed by the district court. As is frequently the case, the eighteen claims say much the same thing in different ways; and for our purposes, it is sufficient to state the salient points. Plaintiff claims a curtain-raising device comprising several cords attached to the curtain, pulleys, and cleats, or other device for securing the cords; some kind of flexible weight in the bottom of the curtain, so that it will keep its shape; and excessive curtain material, so that changes of shape are feasible.

In its attack on validity, defendant relies on what is known as the Austrian shade and the literature about it. The first bit of literature, dating back to 1889, is an article on decorative upholstery. It describes the Austrian shade, which was a decorative window shade, with pleasing loops at the bottom made by extra material below the crossbar drawn up by cords through the material to its top. The description made it clear that the raising of the curtain by all the cords at once would produce a scalloped effect below the crossbar and a shirred effect above. Next, a book on upholstery published in 1905 described the Austrian shade and pointed out that by varying the size of the pulleys at the top of the curtain an arched effect could be created. Another edition of this book, published in 1913, had illustrations showing how further variations in the contour of the curtain could be made. And an article on "Secrets of Scene Painting and Stage Effects," also published about 1913, gave a description of a method for raising a backdrop with scalloped effect. This substantially states the prior art in evidence below.

 It is clear that plaintiff's addition to this prior art lies solely in the idea of raising and lowering the several ropes independently. This hardly seems to reveal a "flash of creative genius." Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 41, 86 L.Ed. ——. It may be that even this idea of independent operation was known, for in the 1889 article, the author stresses the importance of drawing the several cords "all tightly to see that they are all right to lift the shade perfectly square." Evidently he was worried about independent operation and sought to prevent it. But even had no one thought of independent operation, the most that can be said is that the idea required ingenuity, "but no more than that to be expected of a mechanic skilled in the art." Cuno Engineering Corp. v. Automatic Devices Corp., supra. This test of separating the "flash of creative genius" from the "skill of the calling" must be strictly applied "lest in the constant demand for new appliances the heavy hand of tribute be laid on each slight technological advance in an art." Ibid. Here, the test clearly results in invalidity of the patent. To lay claim to the idea of operating several ropes separately when predecessors had cautioned against it in a different situation is to exalt a trivial step which was no more than an obvious adaptation to a new need.

Plaintiff presses the commercial success of his device. In addition to the Radio City Music Hall curtain, which was constructed under his patent, others, both prior and subsequent, are mentioned. Yet the important factor in these curtains is undoubtedly the ingenious electrical operation of them. This aspect is not in the case, and we can hardly assume that a curtain operated by hand would be a commercial success. A large curtain certainly could not be satisfactorily operated by hand. Hence we can hardly accept a device as a commercial success when it hides behind a completed product which possesses more appealing features. Compare concurring opinion of the Chief Justice in Cuno Engineering Corp. v. Automatic Devices Corp., supra.

Reversed and complaint dismissed.