[Civ. No. 18543.   Second Dist., Div. Two.   Nov. 7, 1951.]

SID B. LEVINE et al., Appellants, v. E. A. JOHNSON AND COMPANY et al., Respondents.

Harry C. Cogen for Appellants.

Walter H. Young for Respondents.

MOORE, P. J.—Appellants are members of a limited co-partnership doing business under the names of Industrial Manufacturers, Ltd., and Santa Fe Tank and Tower Company, Division of Industrial Manufacturers, Ltd., and are engaged in the manufacture of wood tanks, cooling towers and other industrial wood specialties. The Santa Fe Tank and Tower Company, herein referred to as Santa Fe, is a sizable concern with a large plant in Vernon and branch offices in a number of key cities throughout the United States. Together with their corporate predecessors, appellants have been engaged in such operations for approximately 40 years. They instituted this unfair competition action to enjoin several former employees and an associate of one such employee from using or divulging any of plaintiffs' trade secrets or other confidential information relative to plaintiffs' manufacturing processes.

At the outset of the litigation a temporary restraining order and injunction was granted appellants, but following trial of the action judgment was rendered in favor of defendants and the preliminary injunction was dissolved. Plaintiffs appeal from this judgment contending that the evidence establishes that defendants, particularly Eskil Johnson and his son Edward, are conducting a competing enterprise, manufacturing tanks and cooling towers utilizing confidential trade secrets, knowledge of which was obtained by the senior Johnson during his previous employment with Santa Fe.

Eskil Johnson was in the employ of appellants and their predecessors for some 35 years. During the major portion of such period he held the position of field superintendent. In this capacity he supervised most of appellants' construction jobs and had complete access to their blueprints and other engineering data. Shortly after voluntarily terminating his employment with plaintiffs in October, 1943, Eskil began operating his own concern with his son Edward as a partner. This firm commenced production on a small scale, working primarily out of the Johnsons' residence.

By this action appellants demand an injunction against respondents' manufacturing and selling an atmospheric cooling tower very similar in design and construction to one produced for many years by Santa Fe and known as its "N" type tower. Such a tower was constructed in November, 1948, by the Johnsons for the County of Los Angeles. Respondents admitted that on some occasions they had used this same nomenclature in describing the tower they had erected for the

county. In proof of their claim that respondents have wrongfully made use of appellants' trade secrets and information, appellants introduced evidence that respondents had in their possession a set of drawings of the "N" tower. Such drawings were removed from the Santa Fe plant by one Rikala, employed there as a layout[1] man from April, 1948, to April, 1949. He testified that such plans were carried home by oversight one evening when he left his work in a hurry; that he had never returned them because he considered they were worthless and obsolete, and because there were numerous other copies thereof scattered about the shack which he had used as an office. In February, 1949, Rikala contacted the Johnsons seeking employment with them and brought along the drawings as a sample of the type of layout work he could handle. These plans were left with the respondents though Rikala was not hired.

One Niemi, a former draftsman of appellants, also solicited the Johnsons for employment. He brought certain of appellants' prints to illustrate his work there. These drawings also were left with the Johnsons. Their dates show that they were used on constructions long since completed. They were produced in quantity and were given to the workmen whereby to cut timbers. They showed a print of a mechanical draft tower and exposed the method used by appellants to facilitate and expedite the cutting of lumber used in construction. They were so numerous that they frequently accumulated in such great volume that it became necessary to commit them to the flames. The drawings could be readily duplicated by taking the measurements of a cooling tower already completed.

Respondents' possession of this material became known to appellants when Rikala approached Coles, another Santa Fe draftsman, and suggested that he too seek employment with the Johnson firm. Coles relayed this information to his employers who agreed that Coles should pretend interest in any offer of the Johnsons whereby to attempt to ascertain their purposes. Within a few days the younger Johnson contacted Coles and the two discussed employment. At this meeting, after Coles had learned of the plans the Johnsons had received from Rikala and Niemi, and had made a list of all such plans,

---

[1] A layout man is one who orders from appellants' plant the necessary items to be used in the construction of a cooling tower as shown by the blueprints.

designs and drawings as were then in respondents' possession, he was offered employment by the Johnson firm.

Appellants argue that the above evidence of three former employees' having engaged in acts of unfair competition, the soliciting of another to leave his employment and go to work for the competing concern, the removal of important blueprints containing confidential material of appellants' manufacturing processes and the production by respondents of a cooling tower identical in design and construction to appellants' "N" tower establishes without dispute a case requiring injunctive relief; that the only thing lacking is a confession by the defendants! But they overlook other evidence.

Although the inferences suggested by appellants might readily have been drawn from the above-recited evidence of appellants, yet this is not the only reasonable deduction to be fairly derived from the total testimony and documentary evidence introduced. A close inspection and analysis reveals substantial proof that respondents did not in their operations appropriate or use a knowledge of appellants' methods, formulas, charts or processes obtained during their association with appellants.

The evidence was sufficient to sustain the judgment. The drawings found in respondents' possession were valueless. The prints were of old plans on completed jobs. Some were merely drawings of a piece of 2 x 4 lumber with one end cut at an angle. Dimensions shown on the prints were not necessarily standard but varied with each new construction. In addition, the record discloses that such prints were usually burned as rubbish after the tower had been completed; that the prints were permitted to accumulate around appellants' shack; that workmen used them as napkins and that they were made up in hundreds of copies. Any drawing of appellants could have been duplicated by taking the dimensions of its completed tower. While appellants argue that such measurements would be without value because of shrinkage in the tower after its use, other testimony established that the shrinkage rates of lumber are readily available.

Both Johnsons testified that they never examined the drawings brought to them and did not utilize any of them. The "N" type tower was constructed by them prior to the time appellants' prints were delivered to Johnson by Rikala and Niemi. Most of the specifications for this tower were determined and supplied by the county. In any event, the prints were effectually ignored by all parties after Rikala showed

them. At the time of trial respondents offered to return all of such drawings to Santa Fe.

Edward Johnson denied any attempts to procure information on Santa Fe's operations from Coles. In contradiction of Coles he testified that he did not solicit Coles to get blueprints or mailing lists from appellants. Moreover, Johnson readily informed Coles of the presence of the various drawings and informed the latter of the visits by Niemi and Rikala.

At the time of trial respondents had constructed only one "N" tower and about 6 spray-type towers. For the construction of the tower for Los Angeles County respondents were the only bidders. Performance ratings therefor were done by county engineers. Eskil Johnson testified that there were blueprints for this construction but that it was not necessary for him to refer to them. He had built so many towers over the years and his experience had been so diversified that he was able to cut and fit various tower parts without drawings.

The Johnsons further testified that information as to the "banding" (a process which appellants contend is their own trade secret) of their towers was obtained from various sources, namely, from Eskil's long experience in the business, from other tower manufacturers and from published engineering data. Although the confidential nature of such information has been stressed by appellants, there is no proof that respondents' information came from Santa Fe's records.

Appellants have also consumed many pages of argument in describing the construction and operation of cooling towers and in demonstrating that there are numerous trade secrets in their business, the result of long trial and error over the years. This is true to some extent. However, the general nature and construction of such towers is not exceedingly complex. In general they work on the principle of distributing heated water at the top of the tower by trays, troughs or sprays. As it falls through space it strikes various decks built in a gridiron fashion. Such falling breaks up the water into smaller droplets which are cooled by the air passing through the tower. Basically it is a theory of cooling by evaporation. Louvers are placed on the sides of the tower to prevent water from spilling out but at the same time to permit air to pass through. Expert testimony by appellants' witness, Mr. Lambeth, established that there is ample available information from which engineers can design, rate and size cooling towers. A consultant, without practical ex-

it was testified, can rate the performance of such a
which would be economically competitive.

thus demonstrated that there is conflicting evidence
the matter of the culpability of respondents' conduct
carrying on their competing enterprise. Therefore, on
familiar principles of appellate procedure, the determination
of the trial court cannot be disturbed. We heartily endorse
the observations of the trial judge, to wit, that while appel-
lants introduced substantial evidence to show that the business
of constructing towers is extremely complicated and difficult
and is dependent upon formulas developed by technically
skilled engineers through long periods of trial and error, yet
Eskil's knowledge was of a highly practical nature and by
reason of his 40 years of daily experience he was able to design
his own plans which he utilized in constructing his towers.
Eskil Johnson had played a large part in the development
of the entire field. He could construct such towers ''almost
instinctively'' without blueprints of any sort. He was not
concerned, for example, with precisely exact angles for the
setting of the tower louvers, as were appellants. He cut and
fit most of such parts in the field. From years of building
and from repairing and moving such towers for many people,
Mr. Johnson had a wealth of general experience which was
the primary asset of the new concern and not the fruits of
piracy of secret information belonging to appellants.

In the absence of uncontradicted evidence of respondents'
having utilized appellants' confidential processes and trade
secrets the demands of appellants were properly rejected.
To grant the relief prayed for by appellants would virtually
operate to deprive respondents of their right to pursue a
gainful and lawful occupation in the field for which they are
equipped by virtue of Eskil Johnson's almost half century of
service in his field. This, equity cannot do. ■■ Every person
as free to pursue any calling he may choose as to possess
y property he owns. He may compete fairly with his former
employer for the patronage of former customers. (*Continental
-Na-Var Corp.* v. *Moseley,* 24 Cal.2d 104, 110 [148 P.2d 9].)

■ Injunction is not available to an employer to restrain
rmer employee if the alleged secrets are not in truth
ts. (*Scavengers Protective Association* v. *Serv-U-Garbage*
218 Cal. 568 [24 P.2d 489].) It follows, therefore, from
iew of all the evidence that, whether the processes as-
by appellants to be their own or whether they were

invented by respondent Eskil Johnson, respondents be disturbed in their use of them.

Judgment affirmed.

McComb, J., concurred.

A petition for a rehearing was denied November 28, 1951 and appellants' petition for a hearing by the Supreme Court was denied January 3, 1952.