398 F.2d 7
 BOWSER, INC., an Indiana Corporation and Briggs Filtration Company, a Delaware corporation, Appellants,
v.
FILTERS, INC., a California corporation, Engineered Fabrications, Inc., a California corporation doing business under the style of Enfab, Inc., and Lucian W. Taylor, Appellees.
 No. 21701.
 United States Court of Appeals Ninth Circuit.
 June 25, 1968.
 
 1
 Bernard Hoban (argued), Clarence E. Threedy, Edward C. Threedy of Threedy & Threedy, Chicago, Ill., Albert L. Jeffers, Fort Wayne, Ind., Lawrence Livingston, of Livingston, Borregard & Grant, San Francisco, Cal., for appellants.
 
 
 2
 Stewart L. Johnson (argued), L. N. Duryea, of Duryea, Carpenter & Barnes, Santa Ana, Cal., Harlow P. Rothert, of Cushing, Cullinan, Hancock & Rothert, San Francisco, Cal., Fraser, Wilson & Fraser, Toledo, Ohio, for appellees.
 
 
 3
 Before DUNIWAY and ELY, Circuit Judges, and THOMPSON,* District Judge.
 
 THOMPSON, District Judge:
 
 4
 This is an action for unfair competition brought by Bowser, Inc., an Indiana corporation, and its subsidiary, Briggs Filtration Company, a Delaware corporation, against Lucian W. Taylor, a California citizen, and his two California corporations, Engineered Fabrications, Inc., doing business as Enfab, Inc., and Filters, Inc., which manufacture fiber glass filters and components thereof. This diversity action is governed by California law which is the law of the forum as well as the place where the acts comprising the alleged unfair competition occurred. Smith v. Dravo Corp., 7th Cir. 1953, 203 F.2d 369, 373.
 
 
 5
 In a companion action for patent infringement, we have sustained the findings by the trial court of non-infringement. Bowser, Inc. v. Filters, Inc. et al., 1968, 396 F.2d 296, decided May 20, 1968, and we refer to that opinion for a more detailed explanation of the difference between the product produced by plaintiffs and defendants' competing filter.
 
 
 6
 Defendant Taylor, after his graduation from Ohio State University in industrial engineering, spent his lifetime working with, manufacturing and developing fiber glass products, particularly in the field of filtration, first with Owens Corning, next with Vibradamp Corporation, and, since 1953, as President and principal stockholder of defendant Enfab, Inc., which he organized to manufacture fiber glass doughnuts for a Government rocket program. In 1956, Enfab became a supplier to Bowser, Inc. of B fiber, fiber glass doughnuts, and in 1958, a supplier to Briggs of 8 pound density, two-inch fiber glass doughnuts, with specified dimensions and grooved interior for use in manufacture by plaintiff of its water separator cartridge under the Marvel patent.
 
 
 7
 Beginning in late 1954 Enfab worked with Oliver United Filters (later Dorr Oliver) in the design and production of fiber glass wrapped tubes for use in filtration, some of multilayer construction, and early in 1958, worked with Permanent Filter Corporation in the design and production of a filter-separator cartridge of multifiber wrapped tube design.
 
 
 8
 In August, 1957, Enfab, under Taylor's management, in an effort to expand Enfab sales to filtration companies, sent out mailings to various companies suggesting the possibilities of a tube with dual diameter fiber glass wraps, and in September, 1957, Taylor visited Briggs Filtration with rough samples of what he had in mind. At that time, Briggs ordered samples for testing of a convolute type tube, specifying coarse fiber on the inside layer and finer fiber on the outside. These sample tubes were delivered by Enfab in December, and in February, 1958, Briggs reported that the tests showed good results for commercial applications but not quite good enough for military specifications. Taylor's contacts with Briggs and Bowser continued through 1958 and 1959 in connection with orders for components of plaintiffs' filters.
 
 
 9
 In July, 1958, Taylor decided on a crash program in an effort to produce a wrapped tube filter separator which would pass military requirements, hired Mr. James Osterman, an industrial engineer experienced in the field, to conduct experiments and tests, obtained good preliminary results, and in August, 1958, organized Filters, Inc., with Osterman as President and sole stockholder, although Taylor was the beneficial owner of all the stock. Taylor purposely and intentionally concealed his ownership of Filters, Inc., through which the successful Taylor filter was manufactured and marketed and accepted for military use. The first military order was obtained in April, 1959.
 
 
 10
 Taylor's reasons, as stated by him, for concealment of his competitive position were to maintain Enfab as a supplier to Bowser and Briggs and to avoid litigation. The deliberate concealment continued through January, 1963. For example, in June, 1959, Taylor told Bowser representatives that he and Enfab were connected with Filters, Inc. only as a supplier, and in a deposition in May, 1961, he averred that he first became "associated with or affiliated with" Filters, Inc. at the end of 1960. The true situation was finally disclosed in Taylor's deposition taken in this action on February 4, 1963, after a long series of evasive answers. The trial court made no findings on the issue of expressly concealed competition, deeming the issue irrelevant, but there is no dispute in the evidence regarding it.
 
 
 11
 We have summarized the evidence of Taylor's duplicity because it is the springboard and sub-foundation of plaintiffs' whole case on appeal. Despite the trial court's findings against plaintiffs on other material issues in the case, plaintiffs contend that a reversal of the judgment against them is required because of Taylor's deliberate concealment of his competitive intention while engaged in business, through Enfab, with Bowser and Briggs, as a supplier of essential components of sophisticated filtering devices. Plaintiffs' argument is stated as follows: "[I]f Taylor secretly capitalized on plaintiffs' research to any material degree the plaintiffs should be granted relief." While no court can view dispassionately Mr. Taylor's complete lack of candor and good faith in his dealings with plaintiffs after July, 1958, his deliberate evasion of the truth in sworn testimony being particularly abhorrent, there is more to the actionable tort of unfair competition than that.
 
 
 12
 The California position on this kind of liability was said, in Futurecraft Corp. v. Clary Corp., 205 Cal.App.2d 279, 23 Cal.Rptr. 198, 1962, to be that of the Restatement of Torts, Section 757. There a trade secret is defined as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." The subject matter of a trade secret must be secret. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret. Restatement of Torts, § 757, Comment b.
 
 
 13
 The trial court found from sufficient and competent evidence that plaintiffs' research employees disclosed no trade secrets to Taylor, that Taylor's filter was the product of independent research, and that grooving, multilayer construction and the use of various densities of fiber glass were matters of general knowledge in the industry. There is no basis in law or in the evidence to upset such findings.
 
 
 14
 Although given information is not a trade secret, one who receives the information in a confidential relationship or discovers it by improper means may be under some duty not to disclose or use that information. Because of the confidential relationship or the impropriety of the means of discovery, he may be compelled to go to other sources for the information. Restatement of Torts, Section 757, comment b. There is no evidence of a disclosure of useful business information by plaintiffs' employees to Taylor during the existence of a confidential relationship. As a supplier of components to Briggs and Bowser in April of 1958, Enfab and Taylor were under a duty not to disclose trade secrets of the customer to another or to apply those secrets to the manufacture of products for another. The best of plaintiffs' proof is that Taylor learned that a filter produced by him, embodying generally known design characteristics and using varying fiber densities, had been tested with "good results." After entering into contractual relations with plaintiffs, Taylor was exposed to plaintiffs' use of certain grades of fiber glass with different filtering characteristics, but was able to prove on trial that the commercially available grades of fiber glass were generally known and that his own use of glass in constructing filter elements was based on "trial and error" experimentation. In short, the record amply supports the finding that defendants learned nothing material to their business from any of plaintiffs' employees, whether during or apart from the existence of business relations between the parties.
 
 
 15
 It is true that Taylor was given entree to the research facilities of Briggs and Bowser, and that in his business dealings with them, he was apprised of the specifications of certain filtering components with which plaintiffs were experimenting, yet a reading of the entire record, including the two-year correspondence file, leads naturally to the conclusion that there was as much give as take in this relationship. Taylor was no novice in this field and did not act solely on instructions from his customer. On the contrary, his advice on the solution of problems was repeatedly sought by plaintiffs. Thus, there is a marked distinction between this case and the decision in McKinzie v. Cline, 1953, 197 Or. 184, 252 P.2d 564, strongly relied on by plaintiffs, where the appropriation of trade secrets was accomplished by persons who had had no experience whatsoever with the device before being called upon to manufacture it.
 
 
 16
 At the time Mr. Taylor organized Filters, Inc. and successfully developed a filter meeting military specifications, one which embodied concepts different from the stacked doughnut design of the Marvel patent as more specifically appears from the opinion in the patent case, he was furthering an idea based upon his experience with Dorr Oliver and Permanent Filter Corporation — a filter separator cartridge of multi-fiber wrapped tube design. The possibility of success may have gained impetus from the reported success of Briggs' experiments with the sample tubes produced in the Fall of 1957, but the idea for the tubes came from Taylor, not Briggs or its employees.
 
 
 17
 We think the California precedents clearly demonstrate that the ideas, formulae, designs, knowledge or skill asserted as constituting plaintiffs' trade secrets must have originated with the plaintiffs. This is an essential of plaintiffs' proof and it is here that these plaintiffs have failed, as the trial court's findings expressly show. Futurecraft Corp. v. Clary Corp., supra; Sarkes Tarzian, Inc. v. Audio Devices, Inc., S.D. Cal.1958, 166 F.Supp. 250, affirmed 9 Cir., 283 F.2d 695; Levine v. E. A. Johnson & Co., 1951, 107 Cal.App.2d 322, 237 P.2d 309.
 
 
 18
 To reverse this judgment, we would be required to reverse critical findings of the trial court based on adequate evidence and to conclude that because Taylor, after entering into competition with plaintiffs and successfully producing a competing filter, duplicitously concealed his competitive position and continued to do business through Enfab with plaintiffs with access to information regarding plaintiffs' products, a finding is impelled that Taylor must have learned trade secrets from plaintiffs and must have profited from them. We find no basis in logic or precedent for such required inferences from proven dishonesty. The standard of appellate review is to sustain trial court findings unless clearly erroneous.
 
 
 19
 The judgment is affirmed.
 
 
 
 Notes:
 
 
 *
 Hon. Bruce R. Thompson, United States District Judge, Reno, Nevada, sitting by designation