SCHREYER et al. v. CASCO PRODUCTS CORP. et al.

No. 288, Docket 22021.

United States Court of Appeals Second Circuit.

Argued June 4, 1951.

Decided August 8, 1951.

Dean, Fairbanks & Hirsch, New York City, David S. Day, Bridgeport, Conn., for plaintiffs, cross-appellants; Morris Hirsch, New York City, Thomas E. Scofield, Kansas City, Mo., Charles S. Brody and Arthur C. Williams, Bridgeport, Conn., of counsel.

Goldstein and Peck, Bridgeport, Conn., for defendant-appellant; Stephen H. Philbin, New York City, David Goldstein, Arthur A. March and Bernard Glazer, Bridgeport, Conn., of counsel.

Before CHASE, CLARK and FRANK, Circuit Judges.

CHASE, Circuit Judge.

United States Patent No. 2,475,572 was granted to Edward P. Schreyer, a resident of Connecticut, on July 5, 1949, for an "Electric Steam Iron." Rival Manufactur-

ing Company, a Missouri corporation, is the exclusive licensee under that patent. These two as plaintiffs brought this suit against Casco Products Corporation, a Connecticut corporation, and its president Joseph H. Cone, a Connecticut resident. The complaint charged both the infringement of the above patent and unfair competition consisting in the use of information which had been confidentially disclosed to the defendants during negotiations concerning the granting of a license to them. The complaint was dismissed as to defendant Cone, who is no longer a party. Claims 1, 2, 3, 4, 5, 6, 7, 11, 12, and 14 of the patent were held valid and infringed. Claim 18 was held invalid and it, together with claims 19, 20, 22, 23, and 24, which were not herein charged to be infringed, was promptly disclaimed. Claim 8 was held valid but not infringed. Diversity of citizenship being lacking, the court held that it had jurisdiction of the cause of action for unfair competition by virtue of 28 U.S.C. § 1338 (b). The plaintiffs have appealed from that part of the judgment which held claim 8 not infringed and denied an injunction to restrain future unfair competition. The defendant corporation has appealed from that part of the judgment holding patent claims valid and infringed and from that part holding it guilty of unfair competition.

The electric steam iron of the patent is a modern adaptation of the old manually operated flat iron long used in homes and elsewhere for ironing fabric material of various kinds. It may be used as a "dry" iron, but is especially designed for use where it is desirable to moisten the material while it is being ironed. This the iron does by generating steam and discharging it through holes in its base plate onto the fabric.

Such an ironer was by no means new. Two kinds of steam irons have long been in use. One of them had a built-in water reservoir from which small amounts of water dropped to the heated base plate and immediately turned to steam which found its way to the fabric. The other, of which the patent in suit is an example, had a closed built-in boiler in which water was heated to its boiling point by the resistance coils heating the base plate. The resulting steam, when sufficient pressure was attained, was carried to an opening, or openings, in the base plate from which it escaped to the fabric in the desired quantity. A release valve prevented the steam from exceeding the desired, and of course the safe, pressure. Such an iron required an opening through which water could be put into the boiler and a closure, usually a threaded cap, for the opening, and the combination of these elements with others which have long been found in hand-operated flat irons is shown in the prior art. See Patent No. 2,178,512 which was granted to Edward P. Schreyer on October 31, 1939, and which was held invalid for lack of invention in Schreyer v. Chicago Motorcoil Corp., 7 Cir., 118 F.2d 852; Patent No. 2,188,011 which was granted to F. A. Miller on January 23, 1940; Patent No. 2,279,215 which was granted to H. Theilgaard on April 7, 1942; Patent No. 2,309,427 granted to F. E. Wolcott on January 26, 1943; Patent No. 2,322,103 granted to B. Altman et al., on June 15, 1943; and Patent No. 2,328,124 granted to H. E. Bremer on August 31, 1943. But all these earlier irons left something to be desired. In each the filler opening was so small that a funnel, or its equivalent, was needed to pour water into it. The iron had to be refilled frequently and to avoid a loss of operating time during cooling, it was necessary to fill it while it was hot. This required caution, if the boiler was hot and empty, to prevent flash steam and boiling water from spouting through the filler opening, and the filler plug might be so hot as to require the use of some shielding material between it and the operator's hand. The threads on the plug or the opening, or both, might become corroded, and the corrosion might cause the plug to stick so that the operator could not remove it manually.

The patent in suit has apparently disclosed a combination which does away with these handicaps by putting the handle of the iron on a separate plate hinged to the main body of the flat iron at the rear and held in position when closed by a turn latch at the front. The filler opening to the boiler is placed under the hinged cover

and given a mouth wide enough to allow water to be poured in readily without the use of a funnel. The opening is a conical tube tapered toward the bottom with baffles inside the boiler to prevent the spouting effect of flash steam. The closure, mounted on the under side of the hinged plate, is a spring-held plug, ringed with suitable sealing material, which enters the filler opening when the hinged plate is closed. The leverage provided by the hinged plate enables the operator to press the plug into sealing position against the pressure of the spring and the latching of the plate holds it there. As the spring is not completely depressed, the plug serves as a safety valve by lifting under excessive pressure in the boiler and allowing the boiler to "blow off" until its pressure falls below the spring pressure.

None of the elements comprising the patented combination is new in the art. A flat iron with a cover plate hinged at the back and latched at the front is a prominent feature of Goodwin's Patent No. 75,150, granted March 3, 1868, and a similar hinged cover plate is shown in Gray's Patent No. 79,067, which was granted in June of the same year. In Theilgaard's Patent No. 2,279,215, above mentioned, a combination of spring-held filler plug and safety valve is shown which operates as does that of the patent in suit. Nor is the latch at the front of the hinged cover as described in the suit patent noticeably novel either in its construction or in the way it performs.

The enlargement of the opening through which the boiler is filled is too obvious a remedy for the disadvantages encountered in filling through a small opening to require comment.

It follows that decision as to validity must turn upon whether the relocation of the old elements, with the added use of the hinged cover as a lever to put the filler plug into place and as a means to hold it there, amounts to invention. If it does, it must be because of the use to which the hinged cover is put, for all the other features perform in combination as they do in the prior art. But to use a hinged cover plate one had merely to make a selection from among several old types of ironer. With that choice made, to locate the filler opening over the boiler and under the hinged cover plate was but to take advantage of an opportunity which presented itself without requiring inventive powers for its discovery. Then to mount an old combination filler plug and safety valve on this cover plate, so that it was pressed home and held there when the cover plate was lowered and latched in place, was a continuation of the same sort of skill which a good mechanic must have to be good. It was not enough to set him apart from the great number of that type and into the relatively small group of inventors whose genius produces the rare, novel, and useful advances which are patentable. To the extent that this combination is new, it does not embody the solution of problems too difficult for any but an inventor to cope with, and the result is a commercial product of the skill of the art, no doubt an improved ironer, but not a patentable combination. Paramount Industries, Inc., v. Solar Products Corp., 2 Cir., 186 F.2d 999; Cuno Engineering Corp., v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Schreyer v. Chicago Motocoil Corp., supra; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127; Addressograph-Multigraph Corp. v. Staudt, 2 Cir., 124 F.2d 672; Weidhaas v. Loew's Inc., 2 Cir., 125 F.2d 544.

As we find nothing patentable in the combination disclosed, we make no attempt to distinguish between the claims held valid below, or between any of them and the one held invalid, but now hold them all invalid for lack of invention.

Although there was no diversity of citizenship, we think the trial judge correctly decided that the court had jurisdiction over the cause of action for unfair competition under 28 U.S.C. 1338(b). There was in issue in the suit a substantial claim under the patent laws even though, if we are right, the patent is invalid. Consequently, if that claim was "related" to the

cause of action for unfair competition within the meaning of the statute the court had jurisdiction of both.

It appears that after the patent was applied for and after some of the ironers covered by it were on the market, Schreyer and his brother entered into negotiations with representatives of the Casco Products Corporation looking toward the manufacture and sale of the ironer by Casco under a license. During these negotiations Schreyer gave Casco blue prints and other detailed information about the construction of the ironer, and revealed the manufacturing "know-how" of its then manufacturer, a corporation controlled by Schreyer. The complaint alleged, and the court found, that in making the ironer charged in this suit to infringe the patent Casco used such information to its own advantage in time and money. Although the court found no express agreement to hold the information in confidence and not to use it if the negotiations for a license were not successful, there was a confidential relationship created between the parties by the disclosures which restricted the right of Casco to use them to the purposes for which the disclosures were made. Hoeltke v. C. M. Kemp Mfg. Co., 4 Cir., 80 F.2d 912. The breach of this confidential relationship, enabling Casco to invade the plaintiffs' market, was unfair competition.

Unlike the situation in Kleinman v. Betty Dain Creations, Inc., 2 Cir., 189 F.2d 546, 548, this dependent cause of action does not "sound primarily in contract." The basis of it is that Casco not only has competed unfairly but has done so with the use of information disclosed solely in aid of an abortive attempt to negotiate a license agreement under the very patent sued upon. That information all concerned the product on which the patent application was pending and the ways and means for manufacturing it.

The cause of action for infringement of this patent, in which it was shown that the confidentially disclosed information was used by the accused manufacturer, and the cause of action for unfair competition alleged to consist in the use of this information in the manufacture of the infringing article have such a common background of basic facts that the statutory relationship of 28 U.S.C. § 1338(b) is present. Cutting Room Appliances Corp. v. Empire Cutting Machine Co., 2 Cir., 186 F.2d 997; Kaplan v. Helenhart Novelty Corp., 2 Cir., 182 F.2d 311; Paramount Industries, Inc., v. Solar Products Corp., supra.[1]

The information confidentially obtained and used during 1948 was substantially disclosed by the issuance of the patent on July 5, 1949, and the use of that source of information would not, apart from the risk of infringement, have been wrongful. Conmar Products Corp. v. Universal Slide Fastener Co., 2 Cir., 172 F.2d 150. Nevertheless, the trial court found that the use of the confidential disclosures enabled the defendant to produce and market its iron at an earlier date than would have been possible had it relied upon independent research into the construction of the plaintiff's iron then on the market or upon the patent. It accordingly ordered an accounting of the profits resulting from the acceleration of the date when production was possible.

Although the provable damages may present more than the usual difficulty, we feel sure that damages will afford a complete and adequate remedy for any wrong suffered because of unfair competition and therefore find no error in the denial of an injunction.

Judgment on the cause of action for patent infringement reversed and complaint dismissed. Judgment on the cause of action for unfair competition affirmed. All without costs.

1. See also Judge Clark's partial dissent in Kleinman v. Betty Dain Creations, Inc., supra.