Jerome H. **LEMELSON**, Plaintiff,

v.

**KELLOGG COMPANY**, Kellogg Sales Company and the Great Atlantic & Pacific Tea Company, Inc., Defendants.

No. 64 Civ. 818.

United States District Court
S. D. New York.
Sept. 1, 1966.

Arthur T. Fattibene, New York City, for plaintiff.

Groban & Rava, New York City, for defendants, Robert S. Groban, Stephen B. Wexler, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

The complaint in this action undertakes to state two claims for relief: (1) for unfair competition based upon the defendant Kellogg Company's alleged "unlawful appropriation and pirating" of plaintiff's design and construction invention for cardboard face masks, and (2) for alleged infringement by the defendants of plaintiff's patent covering such masks. The first claim, which is the one of primary concern at this time, is predicated upon an alleged confidential disclosure by plaintiff to defendant Kellogg Company (hereinafter, sometimes, "Kellogg") of his designs, ideas, and inventions, followed by Kellogg's exploitation of these disclosures without any payment or compensation to plaintiff. Kellogg has moved for summary judgment dismissing this first cause of action.

I.

The plaintiff, described by himself and his counsel as being possessed of considerable inventive genius, devotes substantial time and energy to creating various novelty products for use in what he calls "the premium field." He has on several occasions attempted, apparently without success, to sell his creations to defendant Kellogg Company. Among the instances of such efforts, plaintiff includes in his papers opposing the motion correspondence he initiated in October 1956 inviting Kellogg's attention to an idea for a cardboard gliding balloon to be assembled with scotch tape. The solicitation was promptly rejected by Kellogg; plaintiff immediately wrote an additional letter indicating that Kellogg might have misunderstood the full merits of his offer; the new solicitation was again quickly rejected; and plaintiff's further effort extending into the spring of 1957 to sell Kellogg the same idea proved similarly fruitless.

The solicitation leading to the case at bar appears from the correspondence submitted by the parties to have been equally unproductive from plaintiff's point of view. This correspondence began on August 9, 1954, again initiated by plaintiff when he addressed Kellogg's "Merchandising Manager" and invited Kellogg's interest with the following letter:

> "I have some new novelty (constructional) items which would fit very nicely on the back of the large Kellog's [sic] Corn Flakes boxes. Art work has been completed and patents and copyrights are pending.

"If you are interested in seeing samples of the art completed to date for consideration regarding its possible application to your products, kindly write me at your earliest convenience.

"Thank you for your interest."

Kellogg promptly rejected the solicitation, writing to plaintiff on August 17, 1954, as follows:

"We are in receipt of your letter of August 9, offering your services and art work for package back panel suggestions to be used in promotional work.

"We have many sources for this type of material, which have proved adequate for our needs, therefore, cannot consider this.

"We appreciate your interest in writing."

On August 24, plaintiff wrote again and suggested that his original letter might have been misinterpreted. He said *inter alia*:

"I believe you may have misinterpered [*sic*] my original letter, at least that is the impression I got from your reply. I am not offering services as an artist but new items which fall into one or more of the following categories. (a) Letters patent, (b) design patent, and or (c) copyrighted. These items are unique in that they can be made up easily in cardboard, etc. To date, eight of my novelty items are on the market.

"If my interperatation [*sic*] of your reply was correct and you are interested in considering these new items which are or can be work [*sic*] out pretty nearly as they will be presented if published, please write me at your earliest convenience. I have noticed that you have used a number of patented items from individuals such as myself.

"Thank you for your continued interest."

There is some dispute in the papers as to whether this August 24 letter was answered by Kellogg. Kellogg indicates that it was; plaintiff urges that it was not. The present significance of this uncertainty is considered below. Continuing with the narrative, the parties are agreed that the epistolary encounters resumed on November 3, 1954, when plaintiff again addressed to the "Merchandising Manager" a letter with the following subject heading:

"Constructional Toy Masks (patent pending—copyrighted)."

This letter said:

"Enclosed please find three prints for constructional masks which I submit for your consideration as possible promotional items.

"The masks comprise: (1) a three dimensional cut-out CLOWN Maskit having attachable make-up strips, a mouth and a cone hat as part of the top of the mask which, when assembled, shapes into a hat and at the same time curves the half-mask face section into a realistic three dimensional shape; (2) a three dimensional cut-out PIRATE mask having earrings, an attachable eyepatch, a three dimensional attachable mustache, and a bandanna which forms the mask into a curved shape when assembled with the Halfmask section; (3) a GRAND-PAW three dimensional mask having an attachable hair-whisp and eyebrows and also having whiskers which may be curled by the use of a pencil to give a realistic three–D effect.

"I note that these masks are all assembly masks having separate components which may be easily assembled with the mask base or half mask as compared to your present designs on the Kellogg Corn Flakes boxes in which operations are made on the base masks only. Accordingly, these features are patentable over the prior art (as the result of a patent search) and I have a patent pending on the constructional mask feature as well as copyrights of the designs and texts.

"Colored artwork and assembled models are available upon request.

"I will gladly consider granting Kellogg sole rights to these designs and the patentable ideas presented should Kellogg be interested in using them.

"May I hear from you shortly?"

The foregoing letter, it will be noted, emphasized that the materials plaintiff was attempting to purvey were already copyrighted and were the subject of a pending patent application. The exhibits adduced on the motion indicate that the enclosures with the letter consisted of the plaintiff's copyright registrations.

On November 6, 1954, plaintiff supplemented his voluntary submissions to Kellogg in the following letter:

"I am enclosing a photostatic copy of a drawing of my CONSTRUCTIONAL MASKS which were mailed to you yesterday. The drawing shows sketches depicting means for operating on the masks to assemble them and shape them in accordance with the instructions included with the drawings mailed yesterday. Please note the means of making all three masks (CLOWN, GRANDPAW and PIRATE) three dimensional. The whiskers of the GRANDPAW mask are curled, etc.

"I trust that I shall hear from you shortly."

On November 9, Kellogg responded with another rejection, writing to plaintiff as follows:

"We are in receipt of your letter of November 3, with photostats of a three dimensional cutout mask assembly which you submit for our use in promotion.

"We have used masks and mask cutouts in many forms and have used them in promotion work for sometime therefore, we do not wish to consider these.

"Nevertheless, we appreciate your interest in writing."

On November 16, plaintiff wrote and requested the return of his photostats, adding a reiterated effort to arouse Kellogg's interest in his offerings. This letter read as follows:

"I am in receipt of your letter of November 9th concerning my three dimensional constructional toy masks and although Kellogg is not interested in the items, I wish to thank you for your prompt and courteous reply to my letter of November 3rd.

"I would very much appreciate return of the four photostatic copys [sic] of the original art work as they did cost me several dollars to have printed.

"As Kelloggs is the only cereal company with a large enough box on which to print such constructional masks, I wonder if there is a possibility that the company would be interested in the item when the patent is issued?"

On November 19, 1954, Kellogg wrote plaintiff a letter reading as follows:

"You will find the stats of your three dimensional constructional toy masks enclosed which you requested in your letter of November 16."

While the foregoing letter refers to a return of plaintiff's materials, the papers submitted on the motion indicate that Kellogg did not in fact return the drawings plaintiff sent with his letter of November 6, 1954. As appears below, this is a matter of some consequence for Kellogg's motion.

On August 8, 1955, plaintiff applied for a patent for his invention of cardboard "Constructional Masks." The application was granted and Patent No. 2,914,772, the subject of his second claim for relief in this case, was issued on December 1, 1959.

II.

■ The motion for summary judgment is an impressive one, reflecting in part the unimpressive sound of the claim against which it is directed. However, the papers do not quite accomplish the imposing task of eliminating even the "slightest doubt as to the facts," Doehler Metal Furniture Co. v. United States, 149 F.2d 130, 135 (2d Cir. 1945). Accordingly, they do not justify decision

without a trial on plaintiff's first claim, especially since the related second claim appears destined for trial in any event. Cf. 6 Moore, Federal Practice 2622–23 (2d ed. 1965).

The largely undisputed facts go far in the direction of showing that there is no basis for plaintiff's claim that he disclosed anything "secret," or "in confidence," to Kellogg. On the contrary, starting from his very first letter of August 9, 1954, he stated that the materials he offered were embodied in applications for "patents and copyrights." It appears, furthermore, that he sent Kellogg nothing "secret," but only copies of his copyrighted drawings and a rudimentary summary of the seemingly simple construction techniques that came to be embodied in his patent. Evidently knowledgeable himself about the difference between the disclosures effected by patents or copyrights and the alternative of seeking true "secrecy" by foregoing such claims to publicly described monopolies, plaintiff says in his affidavit (par. 6):

> "In the pursuit of my business, I have created, developed, designed and made a great many items applicable for use in the premium field. Some of these developments have patentable merit, and as a result I have secured many patents for these inventions. On many other ideas and inventions, I have never applied for patents, preferring to keep them secret until such time that they have been actually offered for sale or in contemplation of being offered for sale."

Cf. Franke v. Wiltschek, 209 F.2d 493, 503 (2d Cir. 1953) (Frank, J., dissenting in part). In short, it appears highly probable that the only dereliction plaintiff can possibly establish against Kellogg (if he can establish any at all) will be the copying of the components and construction ideas for paper masks described in his patent.

■ This is, of course, the alleged wrong involved in plaintiff's second cause of action—for patent infringement. Kellogg's cogent argument is that this same alleged infringement cannot be made the subject of a separate claim (plaintiff's first cause of action) for unfair competition. "If a discovery is one which constitutes invention and for which a patent is issued, the right of further secrecy is, of course, lost, for a legal disclosure and public dedication have then been made, with a right of limited and temporary monopoly granted as the reward." Sandlin v. Johnson, 141 F.2d 660, 661 (8th Cir. 1944); see also Schreyer v. Casco Products Corp., 190 F.2d 921, 924 (2d Cir. 1951), cert. denied, 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683 (1952); Conmar Products Corp. v. Universal Slide Fastener Co., 172 F.2d 150, 155 (2d Cir. 1949). The motion papers indicate that plaintiff's first claim will probably founder upon this principle. Not only did he disclose no secret; he appears to have no solid basis for asserting that he dealt with Kellogg "in confidence." This is not a case where the allegedly injured party and his knowledge were sought out by the alleged wrongdoer. Cf. Franke v. Wiltschek, supra; Seismograph Service Corp. v. Offshore Raydist, Inc., 135 F.Supp. 342 (E.D.La.1955), modified and aff'd, 263 F.2d 5 (5th Cir. 1958). It is not a case where plaintiff's "know-how" or unpublished ideas, apart from or supplementary to a patent, were given over by him in addition to his published and publicly available patent claims. Cf. Schreyer v. Casco Products Corp., supra; Booth v. Stutz Motor Car Co. of America, 56 F.2d 962 (7th Cir. 1932). Plaintiff was the unsolicited offeror, and the "confidences" he gave were not secrets—or, at least, ceased to be secrets after December 1, 1959.

■ It seems obvious on settled principles that the claimed monopoly of a patent may not be enlarged by the expedient of distributing the patented subject and calling it "confidential." If the patent is valid, one who appropriates its teachings may be sued as an infringer. If it is invalid, "it can be copied at will." Compco Corp. v. Day-Brite Lighting, 376

U.S. 234, 238, 84 S.Ct. 779, 782, 11 L.Ed. 2d 669 (1964). In either event, the patentee cannot add to the rights Congress has defined by mailing copies of his patent and classifying this unsolicited intrusion as a "confidence."

Although it thus seems likely that Kellogg will defeat plaintiff's first claim after trial, there is not the certainty of this to warrant summary judgment. The motion papers leave at least three interrelated factual points shrouded in some doubt; full exploration of these points could conceivably, if by no means probably, show some basis for recovery on the first claim.

(1) In the affidavit supporting the motion, the pertinent correspondence is said to conclude with Kellogg's letter of November 19, 1954, returning plaintiff's "stats." The affidavit says plaintiff "offered a product to Kellogg, Kellogg rejected the product, returned his materials to him, and there the matter ended until the institution of this lawsuit." But plaintiff's papers in response indicate that the matter did not quite end as Kellogg says and that Kellogg did not exactly return the materials as its affiant says it did. For plaintiff produces a letter from Kellogg to his counsel dated August 21, 1962, which said *inter alia:*

> "With regard to Mr. Lemelson's submission of November 6, 1954, we are holding that matter in our files in accordance with the terms and conditions covered by our policy on submission of ideas and suggestions at the time. A printed statement setting forth our policy and the terms and conditions on which ideas and suggestions could be submitted was supplied to Mr. Lemelson prior to the date of his November 6, 1954 submission with instructions not to disclose the material except in accordance with the stated policy."

The genuineness of this letter is not disputed; nor is the inconsistency with Kellogg's own account explained.

(2) Another clouded factual area arises from the correspondence of August 1954. The Kellogg affidavit omits this entirely. Plaintiff includes it and contends further that (a) Kellogg has claimed it sent plaintiff a form of waiver on August 30, 1954, and (b) he never received any such form. The existence of these opposed contentions is not denied by Kellogg.

(3) Kellogg says plaintiff's invention, if it was copied, was never copied until 1962, well after issuance of the patent in December 1959. Plaintiff says this is disputed. While plaintiff's assertion of such a dispute is not in itself substantial, the uncertainties described in the two foregoing points infect this one: it is at least possible (and peculiarly known to Kellogg) that this defendant—having kept material it erroneously says it had returned, and having unsuccessfully sought a waiver of plaintiff's rights— made some use before December 1959 of the ideas plaintiff had offered.

Such factual uncertainties, however slight they seem in the papers, are not to be swept away by the granting of summary judgment. There is a possibility, not utterly fanciful, that plaintiff may show a use of his disclosures before the patent issued, entitling him to some relief on his first claim. Schreyer v. Casco Products Corp., supra, 190 F.2d at 924. It is even possible that a full evidentiary record may impair Kellogg's strong showing on the motion papers that plaintiff's disclosures in 1954 revealed nothing beyond what was made publicly available when the patent issued in 1959. At any rate, until the facts are brought clearly into focus, it is premature to decide that the claim is inevitably baseless as a matter of law. Cf. 6 Moore, Federal Practice 2426 (2d ed. 1965).

The motion for summary judgment is denied.

It is so ordered.