BIODYNAMIC TECHNOLOGIES, INC., Plaintiff,

v.

CHATTANOOGA CORPORATION, Defendant.

No. 85–6069–Civ.

United States District Court, S.D. Florida, Miami Division.

Aug. 19, 1986.

Ira Marcus, Ft. Lauderdale, Fla., for plaintiff.

Michael T. Burke, Ft. Lauderdale, Fla., for defendant.

## MEMORANDUM OPINION & ORDER ENTERING PARTIAL SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFFS

SPELLMAN, District Judge.

### I

### BACKGROUND

This CAUSE comes before the Court on the Plaintiff's, Biodynamic Technologies, Inc., [hereinafter Biodynamic] Motion for the Entry of an Order Granting Partial Summary Judgment on the issue of Liability on Counts III, VII and X of the Amended Complaint.

A brief summary of the facts is as follows. Biodynamic is a Florida corporation with its principal place of business in Broward County, Florida. The Defendant, Chattanooga Corporation, [hereinafter Chattanooga] is a Tennessee corporation with its principal place of business in Chattanooga, Tennessee. In 1982 or 1983, Biodynamic developed an orthopedic continuous passive motion device (CPM) for the lower extremity known as a "Powerflex" unit. On or about January 12, 1983, an application for a patent for the Powerflex was filed with the United States Office of Patents and Trademarks.

On or about July 26, 1983, Biodynamic and Med Tech Industries, Inc., [hereinafter Med Tech] entered into a written distribution agreement with respect to the Powerflex Unit. *See* Exhibit A attached to the Amended Complaint. In January of 1984, the Plaintiff, through its principals, met with Michael Richardson, the President of Med Tech, and John Maley, the President of Chattanooga, in the offices of the Plaintiff in Broward County, Florida. The representatives of Biodynamic and Chattanooga met to discuss the feasibility of a license agreement for the manufacture and/or sale of the Plaintiff's Powerflex unit. At this meeting, the representatives of Biodynamic were advised that Chattanooga intended to participate in the CPM market and were potential competitors of Biodynamic. *See* Affidavit of Des Horne filed in opposition of Plaintiff's Motion for Partial Summary Judgment. In February of 1984, the Plaintiff delivered to the Defendant a Powerflex unit so that Chattanooga could evaluate it. Pursuant to the negotiations between the parties, in March of 1984, the Plaintiff forwarded to the Defendant a proposed license agreement. *See* Plaintiff's Exhibit B.

On April 5, 1984, John Maley sent a letter to Biodynamic acknowledging receipt of the draft License Agreement and requested a copy of Biodynamic's patent application. *See* Plaintiff's Exhibit C. On April 18, 1984, the Plaintiff informed the Defendant that it was not interested in having Chattanooga manufacture the Powerflex unit for it, but expressed an interest in selling the units to the Defendant. *See* Plaintiff's Exhibit D. On May 7, 1984, the Plaintiff forwarded to the Defendant a copy of the patent application.[1] Chattanoo-

---

1. At the Hearing, this Court was apprised of the fact that initially only the frontal page of the application was set. However, at the Defendant's insistence, the complete application was thereafter forwarded.

Subsequent to the Hearing before the Court, the Defendant filed with this Court a copy of the United States Patent Office's File Wrapper of Zagorski, et al., United States Patent No. 4,549,-534. The Defendant asserts that said file wrap-

per demonstrates that the United States Patent Office rejected all of the claims contained in the Plaintiff's Patent Application on February 2, 1984 and that this information was not disclosed to Chattanooga Corporation at the time the Plaintiff delivered a copy of its patent application. This Court has examined the application and finds that for the reasons explained in this Order that it does not affect this Court's

ga acknowledged receipt of the application of May 14, 1984. *See* Plaintiff's Exhibit E. On July 16, 1984, Biodynamic wrote to Chattanooga to inquire if Chattanooga had changed its mind about manufacturing and/or marketing a CPM device. *See* Letter appended to the Defendant's Supplemental Memorandum. By letter of July 19, 1984, Chattanooga responded to Biodynamic's request. The letter stated that Chattanooga was still awaiting a final evaluation from its patent attorneys concerning Biodynamic's Patent Application. The letter also explained that Chattanooga was continuing to proceed to market with a CPM device and explained that Chattanooga had recently displayed a prototype of the CPM unit it intended to manufacture and the projected dates when the device could be expected to reach the marketplace. *See* Letter of July 19, 1984 appended to Defendant's Supplemental Memorandum. By letter of September 27, 1984, the Defendant, Chattanooga, informed the Plaintiff, Biodynamic, that it was not going to execute the license agreement with Biodynamic. In the letter Chattanooga explained that the patent attorney had advised them that Biodynamic could not reasonably expect to obtain adequate patent protection for the unit. *See* Letter of September 27, 1984, appended to the Defendant's Supplemental Memorandum of Law. Chattanooga did proceed to manufacture and market its CPM unit, the Autoflex or Extendaflex. On or about October 29, 1985, a United States Patent was issued to Joseph B. Zagorski and Stephen C. Roy with respect to the Powerflex unit.

The Plaintiff brought a nine count Complaint against the Defendants, Chattanooga and Med Tech., seeking compensatory and punitive damages and requesting injunctive relief. As a result of a settlement between Biodynamic and Med. Tech., the remaining counts were brought solely against the Defendant, Chattanooga. The Plaintiff has filed a Motion for Partial Summary Judgment on Counts III, VII and X. Count III alleges that the Defendant, Chattanooga, wrongfully converted trade secrets and confidential information concerning the design and manufacture of the Powerflex unit. Count VII is an action for unfair competition against the Defendant, Chattanooga, and arises out of the alleged conversion and misappropriation of the Plaintiff's trade secret and confidential information. Count X is a claim for an Accounting wherein the Plaintiff seeks from the Defendant, Chattanooga, an accounting of profits derived as a result of the alleged breach of the confidential relationship.

The Court conducted a Hearing on the Motion and allowed the parties herein to file Supplemental Memoranda of Law. This Court has been mindful of the burden to be borne by a litigant seeking to prevail on a Motion for Summary Judgment. The Movant must demonstrate that there is no dispute as to any material fact in the case. *See Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In assessing whether the burden has been met, a court should view the evidence in the light most favorable to the opposing party. *See id; Clemons v. Dougherty, Georgia*, 684 F.2d 1365, 1368 (11th Cir.1982). After reviewing the Motion, the Defendant's Response, the Plaintiff's Reply, the Memoranda and Supplemental Memoranda in support, the affidavits, exhibits, and the file in the above-named Cause, this Court finds that there are no genuine issues of material fact and the Plaintiff is entitled to Judgment on the issue of liability as a matter of law on Counts III, VII and X.

## II

## DISCUSSION

Initially, it is significant to note that it is not disputed that the Defendant, Chattanooga, designed and manufactured a CPM device which is similar to the Plaintiff's Powerflex unit in appearance and function. *See* Plaintiff's Exhibit F. The parties, however, are at odds with respect to the resolution of central legal issues. The Plaintiff contends, in essence, that the

determination that the entry of Partial Summary Judgment is appropriate herein.

Defendant's wrongful use of the Powerflex unit and Patent application constitutes a breach of the confidential relationship between the parties and amounts to unfair competition. The Defendant, on the other hand, insists that the Plaintiff's position lacks merit for three basic reasons: first, "an unpatented, publicly sold product can be freely copied, down to the last detail, with impunity;" second, "where a claimed trade secret is embodied by the product itself, the secret is lost when the product is marketed and sold to the public;" and third, the "purchase of a publicly sold product does not constitute a disclosure of 'confidential information.'" *See* Defendant's, Chattanooga Corporation, Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment at pages 6–7.

This Court can not abide by the Defendant's line of reasoning in this regard. This is a case of unfair competition. The focal point of this action is not a determination of the status of the property, but instead a finding of the existence of a confidential relationship. In *E.I. Du Pont De Nemours Powder Company Et Al. v. Masland Et. Al.*, 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016 (1917), Justice Holmes set forth the relationship of trust and confidentiality as the very "starting point" in a cause of action such as this. He stated:

> The word property as applied to trademarks and trade secrets is an unanalyzed expression of certain secondary consequences of the primary fact that the law makes some rudimentary requirements of good faith. Whether the plaintiffs have any valuable secret or not the defendant knows the facts, whatever they are, through a special confidence that he accepted. The property may be denied but the confidence cannot be. Therefore the starting point for the present matter

is not property or due process of law, but that the defendant stood in confidential relations with the plaintiffs, or one of them. These have given place to hostility, and the first thing to be made sure of is that the defendant shall not fraudulently abuse the trust reposed in him. It is the usual disadvantage in the fact that he knew the plaintiffs' secrets he must take the burden with the good.

*Id.* at 102, 37 S.Ct. at 575.

The Defendant herein has countered the argument that secret information was communicated to them while they were in a position of trust and confidence and then used by them to the injury of the Plaintiff by reiterating their position that since the Powerflex product was not subject to patent protection and was thus sold on the market, they were free to duplicate it and use it as a model. In analogous situations courts have discarded identical arguments. Two noteworthy cases, *Franke v. Wiltschek*, 209 F.2d 493 (2nd Cir.1953) and *Smith v. Dravo*, 203 F.2d 369 (7th Cir. 1953)[2] have invalidated the assertion that the existence of a lawful means of obtaining information precludes recovery for the use of unlawful means.

In *Franke v. Wiltschek*, 209 F.2d 493 (2nd Cir.1953), salespeople sought and did obtain the opportunity to represent a manufacturer of compressed perfumed face cloths. After they were shown the secret manufacturing process, they used the information to manufacture a similar product at a lower price. The court, in rejecting the defendants' contentions that they should prevail because they could have obtained the secret process from studying the expired patent and examining the publicly marketed product, elaborated:

---

2. In this action, Tennessee law governs. It is the state where the injury occurred and no other state has a more significant relationship to the occurrence and the parties. *See State Farm Mutual Automobile Insurance Co. v. Olsen*, 406 So.2d 1109, 1111–12 (Fla. 1981); *Amica Mutual Insurance Company v. Gifford*, 473 So.2d 220, 221 (Fla. 5th DCA 1985); Restatement (Second) of Conflict of Laws §§ 6, 145–6

(1971). In *Hickory Specialties, Inc., v. B & L Laboratories*, 592 S.W.2d 583, 587 (Tenn.Ct.App. 1979), the court stated, "The potential to develop the process by independent technology affords the defendants no excuse to obtain the process through a confidential ... relationship and then compete with the developer," and cited *Franke v. Wiltschek*, 209 F.2d 493 (2nd Cir.1953) and *Smith v. Dravo*, 203 F.2d 369 (7th Cir.1953).

It matters not that defendants could have gained their knowledge from a study of the expired patent and plaintiffs' publicly marketed product. The fact is that they did not. Instead they gained it from plaintiffs via their confidential relationship, and in so doing incurred a duty not to use it to Plaintiffs' detriment.

*Id.* at 495.

Likewise, in *Smith v. Dravo Corp.*, 203 F.2d 369 (7th Cir.1953), an action to enjoin the defendant from competing with the plaintiffs in a freight container business, the defendant contended that since the structural designs of plaintiffs' containers were disclosed by their public use and freely circulated material, then no secrets were disclosed. The court responded as follows:

Thus, Pennsylvania will not deny recovery merely because the design *could have* been obtained through inspection. Rather, the inquiry in that jurisdiction appears to be: How *did* defendant learn of Plaintiffs' design. And this, we regard as the proper test.

.      .      .      .      .

It is unquestionably lawful for a person to gain possession, through proper means of his competitor's product and through inspection and analysis, create a duplicate, unless, of course, the item is patented. But the mere fact that such lawful acquisition is available does not mean that he may, through a breach of confidence, gain the information in usable form and escape the efforts of inspection and analysis.

*Id.* at 375. *See also Sikes v. McGraw-Edison Company*, 665 F.2d 731, 734 (5th Cir. 1982); *Water Services, Inc. v. Tesco Chemicals, Inc.*, 410 F.2d 163, 172 (5th Cir.1969); *Bowser Inc. v. Filters Inc.*, 398 F.2d 7, 10 (9th Cir.1968); *Hoeltke v. C.M. Kemp Mfg. Co.*, 80 F.2d 912, 923 (4th Cir.1935).

The principle that because a secret is of such a nature that it can be discovered by lawful means does not deprive its owner of a right to protection from those who obtain it unlawfully is not only generally accepted, it is also sagacious. Any other policy would have a halting effect on commercial transactions. The owners of new and unpatented products would hesitate before transmitting the information and making the disclosures essential to bring about meaningful negotiations. Such protections of confidential disclosures serve to promote the negotiation of profitable business relationships.

This Court is of the opinion that a confidential relationship was established between the parties, that in the course of this relationship, the Plaintiff imparted secret information to the Defendant, and that the Defendant breached such a position of trust and confidence through its improper use of the information. Thus, the essential elements for the Plaintiff's claim have been satisfied. *See Smith v. Dravo*, 203 F.2d 369, 373 (7th Cir.1953); *Hickory Specialities v. B & L Laboratories*, 592 S.W.2d 583, 586 (Tenn.Ct.App.1979).

In January of 1984, the representatives of Biodynamic and Chattanooga met to discuss the proposed business arrangement. The negotiations for a license agreement created a confidential relationship. *See Schreyer v. Casco Products*, 190 F.2d 921, 924 (2nd Cir.1951). The Plaintiff and the Defendant went so far as to negotiate the specific terms of a license agreement. *See* Deposition of John Maley, pages 58–9, 61, 82–3. Pursuant to these negotiations, the Plaintiff forwarded to the Defendant a proposed license agreement. *See* Plaintiff's Exhibits B & C. As a result of the license negotiations, the Plaintiff, at the request of the Defendant, sent to it the Powerflex unit so that Chattanooga could determine the cost of manufacturing the unit and see how well it worked. *See* Deposition of John Maley, at page 74. Prior to receipt of the unit, the Defendant did not know of any of the product's component parts. *See* Deposition of John Maley, at page 42. The Defendant also stated that the costs of manufacturing a particular product is normally proprietary and confidential information. *See* Deposition of John Maley, at pages 55–6. Further, the Defendant requested and received additional confidential

information when it obtained from the Plaintiff its entire patent application. *See* Plaintiff's Exhibits C, D and E. The Plaintiff specifically requested that the Defendant keep the contents of the patent application confidential.[3] *See* Plaintiff's Exhibit D. The Defendant agreed. *See* Deposition of John Maley at page 115.

In sum, there are no disputes that the Powerflex unit was sold to Chattanooga for a specified and limited purpose and that the cost of manufacturing the unit was disclosed. There is no dispute that in the spirit of trust and confidence, the contents of the entire patent application were revealed. All of the information imparted was the direct result of the license negotiations. These negotiations not only created the confidential relationship, but also restricted the right of the Defendant to use the disclosures solely for the purposes for which they were made. *See Schreyer v. Casco Products Corp.*, 190 F.2d 921, 924 (2nd Cir.1951). This Court is of the view that in the matter *sub judice* express promises of trust and confidentiality were exacted from the Defendant. Beyond this, the Court notes that such express agreements or promises are not necessary with regard to the imposition of limitations on the Defendant's use of the disclosures because trust and confidentiality may be implied from the very relationship between the parties. *See E.I. Du Pont de Nemours Powder Co. v. Masland*, 244 U.S. 100, 102, 37 S.Ct. 575, 61 L.Ed. 1016 (1917); *Smith v. Dravo*, 203 F.2d 369, 376 (1953); *Schreyer v. Casco Products Corp.*, 190 F.2d 921, 924 (2nd Cir.1951).

Finally, this Court is persuaded that the Defendant used the secret information in the design and manufacture of the CPM device, the Autoflex or Extendaflex. The similarity in appearance and function between these and the Powerflex are undis-

puted. *See* Exhibit F. After the Plaintiff shipped to the Defendant its Powerflex unit for evaluation, Chattanooga, through its chief engineer, James D. Freye, examined it to see if Chattanooga could build one. *See* Deposition of James Freye, at page 31. He measured the component parts, *see* Deposition of James Freye, at page 33-4, and utilized the Powerflex "as a model." *See* Deposition of James Freye, at page 56.

The Deposition of Claude McCormick, the head of the engineering department at Chattanooga, acknowledges that Chattanooga first conceived of the idea to build a prototype of its unit some time late in February or early March after it received the Powerflex. *See* Deposition of Claude McCormick at page 62. Mr. McCormick admitted that he dismantled the unit and used it "as a basic model off of which components were designed to go into the Autoflex." *See* Deposition of Claude McCormick, at pages 62-3, 108.

In addition, this Court believes that the Defendant's access to and inspection of the Plaintiff's patent application facilitated their endeavor to design and market a copy of the Powerflex unit. The use of a patent application to manufacture and/or sell articles embodying the invention gives rise to liability for the damages resulting therefrom. *See Engelhard Industries Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir.1963). Such liability does not derive from the patent statutes, but from a claim for unfair competition and for misappropriation of secret information. *Id.* at 352-53. In sum, this Court finds that the negotiations between Biodynamic and Chattanooga established a confidential relationship between the parties in the course of which the Plaintiff disclosed secret information to the Defendant and that the Defendant in this position of trust and confi-

---

**3.** The fact that the patent application had been rejected when the Plaintiff delivered it to the Defendant is not determinative of the real issue—whether secret information was communicated to the Defendant in the course of a confidential relationship and used by the Defendant to the detriment of the Plaintiff. As has been elaborated above, the status of the patent application is not a primary concern in determining whether there is a breach of a confidential relationship and meritorious claim for unfair competition. *See Franke v. Wiltschek*, 209 F.2d 493, 495 (2nd Cir.1953).

dence used the information to the injury of the Plaintiff.

### III

### CONCLUSION

In conclusion, this Court finds that there are no genuine issues of material fact and that the Plaintiff is entitled to judgment as a matter of law on Counts III, VII and X. Accordingly, it is hereby,

ORDERED AND ADJUDGED that Summary Judgment is Entered in favor of the Plaintiff on Counts III, VII and X.