Earl Jason LARISCEY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 587–87C.

United States Claims Court.

May 11, 1990.

Lewis B. Gardner, Washington, D.C., attorney of record, for plaintiff. Buel White and Verner, Liipfert, Bernhard, McPherson & Hand, Chartered, of counsel.

Jeffry H. Nelson, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Vito J. DiPietro, Director, and Herbert Berl, of counsel.

## OPINION

FUTEY, Judge.

This case is before the court on defendant's motion to dismiss and for summary judgment. Plaintiff, a prisoner, alleges that he made an invention and defendant used it without authorization. Plaintiff claims compensation pursuant to: (1) the Fifth Amendment taking clause and (2) an implied-in-fact contract theory. Defendant asserts that plaintiff has no property right in the invention. In the alternative, if a property right exists, defendant claims a shop right. Finally, defendant denies the existence of any implied-in-fact contract between the parties.

### Statement of Facts

This case first came before this court on September 21, 1987. Subsequently, this court filed an Order that granted defendant's motion to dismiss, along with plaintiff's request for leave to file an amended complaint. *Lariscey v. United States*, No. 587–87C, slip op. (Cl.Ct. Jan. 29, 1988). Since a statement of the facts in the case was made a part of that earlier order, they will only be supplemented here.

Plaintiff, an inmate in the Federal Corrections Institute at Bastrop, Texas, was employed there to assist in the manufacturing of helmets. This case arises from defendant's use of a jig and cutting process (jig), which plaintiff allegedly invented while employed cutting kevlar[1] at the prison.[2]

The Federal Prison Industries, Incorporated (UNICOR), has manufactured helmets for the military at the Bastrop facility since 1978. From 1978 until the summer of 1986, UNICOR contracted the cutting of kevlar to Gentex Corporation (Gentex). Apparently dissatisfied with Gentex's performance, UNICOR decided to bring the cutting process in-house. Various methods for cutting kevlar were tested, all of which were determined to be inadequate.

During the last 3 months of 1986,[3] plaintiff claims that while employed in the prison, he conceived and designed a jig and cutting process to cut kevlar using scrap materials from the shop floor.[4] It is undisputed that prison officials knew plaintiff was developing the jig. Plaintiff contends that he was unable to keep his design a secret since he was in an open cell.

A Department of Defense representative was scheduled to visit the Bastrop facility and inspect the cutting process sometime in December 1986. One week prior to the scheduled visit, the associate warden and plaintiff's foreman, asked plaintiff to demonstrate the jig, which plaintiff did. Plaintiff admits that he did not negotiate a confidentiality agreement with defendant,

---

1. The record does not contain a description of what kevlar is; it is apparently a material used in the lining of helmets.

2. The Federal Prison Industries, Incorporated (UNICOR), is a wholly owned government corporation. 31 U.S.C. § 9101(3)(D) (1982). UNICOR has the authority to employ prisoners under 18 U.S.C. § 4122(b) (1982). Plaintiff was employed to cut kevlar; his duties did not include research and development.

3. Although plaintiff's amended complaint states that he invented the jig during the first 3 months of 1987, other documents from plaintiff suggest that this is in error.

4. Defendant contends that plaintiff also used shop facilities and received assistance from other inmates. Support for this assertion is found in plaintiff's solicitation letter in which he wrote: "Me and another inmate made the lay-up now used by UNICOR. We want to sell you the cutting process and the lay-up." See *infra* n. 6.

but contends that he expected to be compensated for the use of his invention. The expectation took the form of telling the superintendent of the plant, after the invention was tested, that plaintiff was in the process of obtaining a patent.[5] Defendant contends that there was no mention of compensation when the jig was demonstrated.

UNICOR began successfully using plaintiff's jig between January and March 1987. An outside contractor was brought in during that time to reproduce the jig in metal form. Sometime after UNICOR began using the jig, plaintiff made several modifications to it. On May 2, 1987, plaintiff's foreman submitted an incentive award recommendation on behalf of plaintiff. The record does not indicate that plaintiff ever received an award. Relations between plaintiff and UNICOR officials broke down, and plaintiff was reassigned to other duties.[6]

On September 21, 1987, plaintiff, proceeding *pro se*, filed suit in this court, alleging patent infringement and seeking the appointment of a patent attorney, as well as equitable relief. Defendant filed a motion to dismiss the complaint for lack of subject matter jurisdiction on October 23, 1987. On December 22, 1987, this court directed plaintiff to file a response to defendant's motion. Two responses in opposition were filed, dated January 11, 1988 and January 14, 1988, respectively.

By an unpublished order dated January 29, 1988, this court dismissed plaintiff's cause of action for patent infringement without prejudice, but allowed plaintiff to file an amended complaint. The amended complaint stated a claim for monetary damages under the taking clause of the Fifth Amendment and breach of an implied-in-

fact contract.[7] Defendant moved for summary judgment on both claims on February 29, 1988.

Meanwhile, on March 14, 1988, plaintiff filed a motion requesting the appointment of counsel, which was denied. Plaintiff appealed this decision, and on November 23, 1988, the Court of Appeals for the Federal Circuit affirmed the Claims Court's order. *Lariscey v. United States*, 861 F.2d 1267 (Fed.Cir.1988).

Plaintiff eventually retained counsel on May 15, 1989, when Lewis B. Gardner agreed to represent plaintiff *pro bono*. On August 21, 1989, plaintiff filed a response in opposition to defendant's motion for summary judgment. Plaintiff argued that there were material facts in dispute which preclude the granting of summary judgment. Defendant filed a reply on December 18, 1989.

I

*Discussion*

A. *Jurisdiction*

 Jurisdiction over Fifth Amendment taking claims, such as plaintiff's, is proper in this court. *Golder v. United States*, 15 Cl.Ct. 513, 518 (1988); *see generally Atkins v. United States*, 214 Ct.Cl. 186, 556 F.2d 1028 (1977), *cert. denied*, 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978). In addition, this court has jurisdiction over implied-in-fact contracts under 28 U.S.C. § 1491 (1982). *Pacific Gas & Elec. Co. v. United States*, 3 Cl.Ct. 329, 338 (1983), *aff'd*, 738 F.2d 452 (Fed.Cir.1984).

B. *Summary Judgment*

 Summary judgment is appropriate where the pleadings raise no genuine dis-

---

5. There is no evidence that a patent has ever been issued.

6. The record indicates that plaintiff tried to sell the jig process to Gentex Corporation (Gentex), by means of a letter of solicitation dated "11–3–87", which favorably refers to the increase in production associated with defendant's use of the jig. The record indicates that subsequent disciplinary action was taken against plaintiff for "Unauthorized Use of Mail System."

7. Under the area in plaintiff's amended complaint entitled *"AMOUNT IN DISPUTE"*, plaintiff claims in part:

(1) Monies owed as of November 1, 1987: $300,000

From November 1, 1987, to January 1, 1988: $120,000

Total owed as of January 1, 1987: $420,000
The date, January 1, 1987, seems to be a mistake. The court believes that plaintiff actually meant January 1, 1988.

pute as to any material fact and, as a matter of law, the moving party is entitled to judgment.[8] RUSCC 56(c), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing an absence of evidence to support the non-movant's case. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party opposing the motion for summary judgment has the burden of showing sufficient evidence, not necessarily admissible, of a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 329, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Any doubt over factual issues must be resolved in favor of the party opposing the summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefit of all presumptions and inferences run. *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed. Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). However, the non-moving party must make a sufficient showing to establish the existence of every essential element of the case and may not rely on the mere conclusions. *Deuterium Corp. v. United States,* 16 Cl.Ct. 454, 456 (1989).

There is no dispute concerning the material facts needed to decide the issues in this case: Whether plaintiff disclosed his alleged trade secrets to UNICOR in confidence; whether plaintiff claimed compensation; and whether UNICOR has a shop right to his alleged trade secrets. Most importantly, plaintiff concedes that secrecy was nonexistent and that defendant was aware of the development of the jig. Nevertheless, plaintiff does raise several factual concerns: That UNICOR was unsuccessful in developing a kevlar cutting process; that the prison staff criticized him while he was working on his jig; that a prison official told plaintiff that jobs would be lost if the jig failed; and, that plaintiff was disciplined when he attempted to sell his jig in violation of prison regulations. However, these allegations are irrelevant in analyzing the controlling questions in this case regarding the law of trade secrets and implied-in-fact contracts. Consequently, the court finds that summary judgment is appropriate here.[9]

## II

### Fifth Amendment Taking

Plaintiff contends that defendant's use of his unpatented invention constitutes a compensable taking under the Fifth Amendment. Before there can be a Fifth Amendment taking, plaintiff must have a property interest in the thing that is the subject of the taking. Therefore, the question is whether plaintiff had a property interest in the unpatented invention.

Plaintiff alleges that the unpatented invention is a trade secret. "The threshold issue in all trade secret cases is ... whether in fact, there is a trade secret to be misappropriated." *Frodge v. United States,* 204 Ct.Cl. 812 (1974). A trade secret is protected by the Fifth Amendment taking clause to the extent that there is a property right in the trade secret. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1003–04, 104 S.Ct. 2862, 2873, 81 L.Ed.2d 815 (1984). "[P]roperty interests ... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 1001, 104 S.Ct. at 2872. *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 479, 94 S.Ct. 1879, 1885, 40 L.Ed.2d 315 (1974) (states may protect trade secrets to the extent that state law does not conflict with federal patent laws). Here, Tex-

---

**8.** Since defendant's motion to dismiss was filed with additional documents, it is treated as a motion for summary judgment under RUSCC 56. *See* RUSCC 12(b).

**9.** The court notes that Defendant's Proposed Findings of Uncontroverted Facts consists of undisputed facts. Plaintiff's Statement of Genu- ine Issues of Material Facts In Dispute does not identify any of the government's proposed facts as being in dispute. *See* RUSCC 56(d)(2). Moreover, plaintiff's Statement of Genuine Issues and his affidavit do not contradict the defendant's proposed facts in any material respect.

as law is applicable since all relevant facts concern Texas, such as where the jig was created, tested and used.

## A. *Definition of Trade Secret*

■ Texas, like many states, adopts the Restatement of Torts, § 757, comment b (1939), definition of a trade secret. A trade secret can consist of:

[A]ny formula, pattern, *device* or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a *process of manufacturing, treating or preserving materials*, a pattern for a machine or other device, or a list of customers.

*American Precision Vibrator Co. v. National Air Vibrator Co.*, 764 S.W.2d 274, 276 (Tex.1989) (emphasis added). "Before something can be termed a 'trade secret,' there must be a substantial element of secrecy." *Id.* In addition, the element of secrecy is necessary for the maintenance of the trade secret. *Id.*

Although it is undisputed that plaintiff did not keep his jig secret from UNICOR officials, plaintiff contends that his failure to do so should be excused because he is in prison. However, plaintiff has failed to cite any authority, except for an implied confidential relationship theory, which may allow this court to excuse this state law requirement by virtue of the fact that plaintiff is a prisoner.[10]

## B. *Implied Confidential Relationship*

Although plaintiff disclosed his jig to defendant, he contends that this disclosure was protected by a confidential relationship between the parties.[11] If a confidential relationship existed when the trade secret was disclosed, defendant had a duty not to use or further disclose the secret. *American Precision Vibrator Co.* at 276. In this case, plaintiff admits that there was no express confidential relationship, but alleges that an implied confidential relationship was created when plaintiff requested to be compensated.[12]

Whether an implied confidential relationship exists is a factual question. *J.C. Kinley Co. v. Haynie Wire Line Serv., Inc.*, 705 S.W.2d 193, 196 (Tex.1985). However, the absence of an express agreement establishing a duty of confidentiality is not a bar to the finding of an implied agreement; it is one factor to be considered. Other factors include the nature and extent of security precautions and the degree to which the trade secret has been placed in the public domain by plaintiff. *Id.*

Plaintiff claims to have effectively requested compensation when the jig was being tested, by informing the superintendent of the plant, that he, plaintiff, was in the process of obtaining a patent. In support of this position, plaintiff cites to *Schreyer v. Casco Prods. Corp.*, 190 F.2d 921 (2nd Cir.1951), *cert. denied*, 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683 (1952). In *Schreyer*, the plaintiff, who was in the process of applying for a patent, disclosed information to the defendant during negotiations of a licensing agreement. The disclosure was restricted to the use of the information in the negotiations, and the court held that due to the negotiations, an implied confidential relationship had been created. *Id.* at 924. That is not the situation in this case. Plaintiff has not contended that there were any negotiations between himself and defendant. The allegation in plaintiff's affidavit, that the superin-

---

**10.** In addition, defendant contends that plaintiff extinguished his property right in the trade secret when he attached drawings of the jig to the original complaint. Although plaintiff admits that drawings of the jig were attached to the complaint, he states that the disclosure took place well after defendant's alleged taking occurred. In light of our disposition of this case on other grounds, we need not reach these contentions.

**11.** To the extent that plaintiff's arguments allege a violation of a confidential relationship which suggests a cause of action sounding in tort, *Smith v. Dravo Corp.*, 203 F.2d 369 (7th Cir. 1953), this court has no jurisdiction. 28 U.S.C. § 1491(a)(1) (1982); *see Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002 (1967).

**12.** Plaintiff's affidavit p. 5.

tendent told him that he no longer owned the jig, demonstrates this. Consequently, plaintiff's disclosure could not have occurred as in *Schreyer.* Therefore, no implied confidential relationship was created, and *Schreyer* is distinguishable.

Furthermore, the court notes defendant's argument that a confidential relationship generally arises when one party places its trust and confidence in another, *United States v. Reed,* 601 F.Supp. 685, 705–08 (S.D.N.Y.), *rev'd on other grounds,* 773 F.2d 477 (2nd Cir.1985), and that this is not the relationship here. As the defendant expresses it: "Trust and confidence are not hallmarks of a relationship between a prisoner and his jailer." Plaintiff fails to establish that he had any type of confidential relationship with UNICOR. To the contrary, he contends that the prison staff "openly criticized" him and that he believed that he could not "negotiate a confidentiality agreement with UNICOR."

"If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly disclose the secret, his property right is [completely] extinguished." *Ruckelshaus,* 467 U.S. at 1002, 104 S.Ct. at 2872. Since plaintiff disclosed his jig to defendant without either an express or implied confidential relationship, whatever property interest plaintiff had in it, if any, was extinguished. Consequently, no Fifth Amendment taking has occurred. Therefore, since plaintiff has failed to show that he has a protectable trade secret, the granting of summary judgment on this claim is appropriate.

## C. *Shop Right*

█ Assuming *arguendo,* that plaintiff has a property interest in the trade secret, the court finds that defendant has a shop right which permits the defendant to use the invention without charge, as if a license

were granted. *LeFiell v. United States,* 162 Ct.Cl. 865, 869 (1963) ("the mere fact that an employer uses the time and facilities of his employer in developing an invention does not entitle the employer to ownership rights in the employee's invention. In that event, where it appears from the facts that the employer made a substantial investment in the invention and that the inventor consented to the employer's use thereof, the employer would have a shop right to the patent; i.e., a right to use the invention in his business"). *See Gill v. United States,* 160 U.S. 426, 435, 16 S.Ct. 322, 326, 40 L.Ed. 480 (1896). The fact that the employer has a substantial investment in the invention because it has expended money, property or services on the invention is an indication that the inventor acquiesced. *Id.*

It is not disputed that plaintiff worked in the prison shop where he was employed to cut kevlar, and used, at least defendant's scrape materials, exclusively in creating jig models.[13] Plaintiff submitted his jig to his shop foreman, and allowed the jig to be used in the prison shop. After testing the wooden model of plaintiff's jig, defendant had the jig reproduced in metal form and began using it at the prison with plaintiff's knowledge. The court infers that the reproduction in metal form constitutes further testing and development of the jig. In *Wommack v. Durham Pecan Co.,* 715 F.2d 962, 971 (5th Cir.1983), a shop right existed in a process conceived and reduced to practice by an employee at home; the employer's contribution was the commercial testing by the employer of the employee's idea. The court finds the UNICOR's contribution in testing the commercial application of the jig was significant as that in *Wommack.* Defendant invested about $20,000.00[14] in constructing the jig in metal, which this court construes to be a substantial

---

13. In a prison, it is hard to imagine how plaintiff could construct anything like a cutting jig without using at least some of defendant's materials and supplies. In addition, the court notes that the personal possessions listed in plaintiff's prison inventory could not readily be used by themselves to construct and test a cutting jig.

14. In *Melin v. United States,* 201 Ct.Cl. 748, 757, 478 F.2d 1210 (1973), an employer's contribution of machinery and parts of a value of $5,000.00 was found sufficient to generate a shop right.

amount.[15] In addition, in the shop, plaintiff redesigned the jig to improve its performance. Not until several months after he allowed the jig to be used in the shop did plaintiff first seek compensation from the defendant. All of these facts suggest that the jig was developed with substantial investment by defendant and that plaintiff consented to defendant's use.

However, plaintiff denies that he consented to defendant's use. Plaintiff contends that he objected to defendant's testing of the jig by telling the superintendent that he was in the process of obtaining a patent. Plaintiff claims that this notification by itself precludes a shop right, citing *Lone Star Steel Co. v. Wahl,* 636 S.W.2d 217 (Tex.App.1982). However, the court in *Lone Star* held that a shop right did not exist when an employee refused to sign an employment contract amendment which would have assigned his patent rights to his employer for no additional consideration. *Id.* at 220. Consequently, plaintiff's statement, without a request for compensation, nor without any other activity, is not sufficient. The court finds that a shop right exists in favor of defendant.

### III

#### *Implied-in-Fact Contract*

■ Plaintiff also argues that there was an implied-in-fact contract between the parties in which defendant agreed to compensate plaintiff for the use of his jig. An implied-in-fact contract requires a showing of mutual intent, lack of ambiguity in offer and acceptance, and authority of the government representative upon whose conduct plaintiff is relying to bind the government. *Pacific Gas & Elec. Co.,* 3 Cl.Ct. at 338–39.

In this case, plaintiff has failed to allege any facts from which this court could imply that there was a mutual intent between the parties to compensate plaintiff. Plaintiff contends that he requested compensation by informing the superintendent that he was in the process of obtaining a patent. Assuming that this is sufficient to constitute an offer, the superintendent's response that plaintiff no longer owned the jig,[16] could in no way be deemed an acceptance. Therefore, even in light of plaintiff's facts, a determination cannot be made that there was a mutual intent to compensate him.

Furthermore, assuming that there was mutual intent, plaintiff has not alleged the authority of any government representative upon whose conduct he relied. Indeed, plaintiff has not indicated the identity of any person, other than the superintendent, with whom he even remotely discussed compensation. In addition, plaintiff has failed to argue or allege facts to indicate that the superintendent had any authority to bind defendant. *Pulaski Cab Co. v. United States,* 141 Ct.Cl. 160, 165, 157 F.Supp. 955 (1958) ("[a]n agent without authority so to do cannot make the United States liable for its contracts"); *Radioptics, Inc. v. United States,* 223 Ct.Cl. 594, 612, 621 F.2d 1113 (1980).

Plaintiff, in opposing summary judgment, may not rely upon unsubstantiated conclusions, but must make some showing of the essential elements of his case. *Deuterium,* 16 Cl.Ct. at 458. This burden has not been met. Plaintiff has merely relied on conclusionary statements that an implied-in-fact contract existed without alleging any facts to support this position. Furthermore, to recover under a wrongful taking claim, in addition to showing that he has a protectable trade secret, plaintiff must show "that the parties entered into a contract, either express or implied in fact, in which defendant agreed not to use or disclose plaintiff's design ... [and] that defendant has breached the parties contractual agreement." *Frodge* 204 Ct.Cl. at 812. This plaintiff has failed to show. There-

---

**15.** The creation of the jig in metal form by defendant and its subsequent use in actual production was the critical final test which proved the jig's viability. Furthermore, plaintiff did *not attempt to sell the jig process to Gentex until* it had been tested in metal form at the prison and plaintiff could cite its performance there. See *supra* n. 6.

**16.** Plaintiff's affidavit p. 5.

fore, the granting of summary judgment in this case is appropriate.

## Conclusion

For all the above reasons, defendant's motion for summary judgment is granted. Accordingly, the Clerk is directed to dismiss plaintiff's complaint. No costs.