553 So.2d 1325 (1989)
CONCEPT, INC., Appellant,
v.
THERMOTEMP, INC., Appellee.
No. 89-01375.
District Court of Appeal of Florida, Second District.
December 13, 1989.
*1326 Steven L. Brannock and Stacy D. Blank of Holland & Knight, Tampa, for appellant.
F. Wallace Pope, Jr., of Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Clearwater, and James D. Adducci and Jeffrey B. Lieberman of Schuyler, Roche & Zwirner, Chicago, for appellee.
ALTENBERND, Judge.
Concept appeals a temporary injunction which prevents it from manufacturing, marketing, distributing, or selling a thermal therapy machine similar to Thermotemp's thermal therapy machine. We affirm the temporary injunction because Concept breached a written confidential disclosure agreement for at least eight months by using Thermotemp's confidential information to develop a machine that would compete with Thermotemp's machine.
Thermotemp is a Florida corporation located in Tampa, Florida. Thermotemp's president, James Wilson, developed a thermal therapy machine, which controls pain, swelling, and blood loss after surgery. Specifically, the machine circulates water through a set of hoses to an insulated pad that can be applied directly to a patient. The temperature of the water can be moderated, thus the machine acts much like a hot water bottle or an ice bag depending on the temperature of the water.
Although Mr. Wilson did not invent the machine, his efforts to develop a marketable machine took approximately six years. Thermotemp has been marketing its thermal therapy machine since 1985. It sells the machine to hospitals under the registered trade name "Hot/Ice." The manufacture and sale of this thermal therapy machine is Thermotemp's only business.
Concept is also a Florida corporation. It is located in Largo, Florida. Concept markets various types of machinery to hospitals. In 1987, Concept was not in competition with Thermotemp, although Thermotemp had several competitors. In that year, Concept approached Thermotemp concerning an interest in establishing a business relationship.
On May 20, 1987, before engaging in any serious discussions concerning this business relationship, the two companies entered into a written "confidential disclosure agreement." The agreement states that both Concept and Thermotemp would disclose to one another "certain trade secrets, know-how and confidential information in order to establish or further such business relationship." Each party agreed that, for a period of three years, it would "hold in confidence and not use for its own benefit any confidential information disclosed to it by the other party." The parties stipulated in the agreement that a breach of the agreement would result in irreparable injury and that the agreement could be enforced by injunction.
The agreement does not expressly define "confidential information." In light of the above-quoted language, however, it is clear that the phrase includes information which does not fall within the definition of "trade secrets." Although the agreement does not define "confidential information," it does provide that four separate types of information are not confidential information for purposes of the agreement. These exclusions include information which is already in the public domain and information which is published by the disclosing party, or a third party, and becomes a part of the public domain.
Once the parties executed this agreement, they conducted extended business negotiations. In addition to describing its existing machine to Concept, Thermotemp *1327 disclosed that it intended to market a new machine in the relative near future which would have three additional features. These additional features included: (1) a flow meter which would shut off water circulation in the event of an obstruction in the machine; (2) electronic touch pads instead of traditional electric switches; and (3) an improved temperature probe to regulate the temperature of the circulating water. After these and other disclosures had been made, the parties' negotiations failed.
After the negotiations failed, Concept returned to its own laboratory. In approximately May 1988, Concept began to develop a competitive thermal therapy machine incorporating improvements which it knew would compete with Thermotemp's new machine.
In February 1989, Thermotemp took a prototype of its new model to a trade show to display the machine and announce that it would be on the market in the spring of 1989. Concept also went to the trade show and displayed its new machine. This was Thermotemp's first knowledge that Concept was using the ideas revealed during the negotiations.
Following the trade show, Thermotemp returned to Florida and filed this lawsuit against Concept. The complaint contains several counts including a count for breach of contract and a count for common law unfair competition. Although the temporary injunction discusses both breach of contract and common law unfair competition, we affirm the temporary injunction on the breach of contract theory without reaching the common law unfair competition theory.
Concept argues that the trial court erroneously entered the temporary injunction because flow meters, touch pads, and temperature probes are all mechanisms which were in the public domain in 1987, and thus were not trade secrets entitled to protection. Concept argues that none of these features fall within one of the most widely accepted definitions of "trade secret":
A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know it or use it.
Restatement of Torts § 757 comment b (1939).
Assuming that these items were not trade secrets, the trial court was still within its discretion to grant a temporary injunction in this case. Parties are entitled to enter into contracts in which they agree not to use or disclose confidential information, even though the information may not qualify as a trade secret in a legal sense. 2 R. Callmann, Unfair Competition, Trademarks & Monopolies § 14.04, (4th ed. 1982 & Supp. 1989). If such a contract does not violate any established public policy, the parties should be entitled to enforce the injunctive provisions of their contract in a Florida court as contemplated by their contract.
In this case, Thermotemp presented evidence that it disclosed to Concept confidential information concerning planned improvements for Thermotemp's machine. There is no evidence in the record to suggest that Thermotemp disclosed its planned improvements to anyone other than Concept prior to the trade show in February 1989. Although each specific improvement may or may not have been a common law trade secret, the information which Thermotemp divulged to Concept under the confidential disclosure agreement was certainly information which Thermotemp intended to keep secret. It was also information which gave Concept an unintended advantage when it entered the market in competition with Thermotemp. Thus, the trial court was entitled to find that Thermotemp's planned improvements were confidential information under the agreement and that Concept had used this information for at least ten months before Thermotemp placed its improvements in the public domain.
Concept has not presented any public policy which would preclude the enforcement of this agreement. Concept formed a confidential relationship with Thermotemp, which is the type of relationship that can justify the enforcement of this type of *1328 agreement. See Dotolo v. Schouten, 426 So.2d 1013 (Fla. 2d DCA), review denied, 434 So.2d 888 (Fla. 1983); Biodynamic Technologies, Inc. v. Chattanooga Corp., 644 F. Supp. 607 (S.D.Fla. 1986). Concept does not suggest that the agreement violates any statute promoting competition. Such voluntary agreements may frequently be necessary to encourage Florida businesses to expand and grow. The restrictions in the agreement were acceptable to the parties when they entered into the agreement, and those restrictions do not appear to overly restrict competition in this market.
Concept may have been entitled to use this information had it not entered into this agreement protecting information in addition to trade secrets. See Walker v. University Books, Inc., 602 F.2d 859 (9th Cir.1979) (plaintiff not entitled to protect ideas for improvements in I-Ching cards as trade secrets in a case not involving a covenant not to disclose). On the other hand, one doubts that Thermotemp would have disclosed its future plans in the absence of this agreement.
Concept has not specifically challenged the duration or the breadth of the temporary injunction. In light of Thermotemp's public disclosure of its improvements at the trade show, its confidential information apparently entered the public domain in February, 1989. While this disclosure does not prevent the injunction in this case, it may be a factor in determining the appropriate length of the injunction. See generally K-2 Ski Co. v. Head Ski Co., 506 F.2d 471 (9th Cir.1974); American Can Co. v. Mansukhani, 742 F.2d 314, 334 n. 24 (7th Cir.1984) (discussing propriety and length of "headstart" injunctions). Since the appropriate length of the injunction has not been litigated in the trial court, we express no opinion on that issue.
Affirmed.
CAMPBELL, C.J., and SCHOONOVER, J., concur.